**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Oscar DIAZ–ALBERTINI,
Defendant-Appellant.**

**No. 84–1818.**

United States Court of Appeals,
Tenth Circuit.

Sept. 10, 1985.

Dennis J.C. Owens of Raymond, Raymond & Owens, Kansas City, Mo., for defendant-appellant.

David N. Williams, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him on brief), Albuquerque, N.M., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, SETH, Circuit Judge, and BRIMMER, District Judge [*].

SETH, Circuit Judge.

Oscar Diaz-Albertini appeals his conviction under 21 U.S.C. § 841(a)(1) for possession of cocaine with intent to distribute. State police arrested the appellant and his wife after a search at a roadblock uncovered nearly thirty pounds of the drug. The trial court granted a motion for a new trial made by the appellant's wife and denied the appellant's motion. The appellant now asserts that juror prejudice denied him a fair trial and that the police discovered the contraband through an unlawful search.

New Mexico state police officers set up a roadblock near the town of Moriarty to inspect drivers' licenses, insurance and registration papers for New Mexico vehicles. All cars were stopped. A station wagon driven by the appellant was stopped at the roadblock. The appellant had a Florida driver's license. The car's license plates and registration were from California. The appellant's name was not that of the registered owner. The investigating officer directed the appellant to drive the car onto the highway's median. The officer then proceeded to make a NCIC check on the station wagon. The NCIC computer did not list the car as stolen. The officer returned and asked permission to search. The appellant assented verbally. The officer next prepared a written consent to search form which the appellant signed.

After a cursory inspection of the passenger compartment, the officer had the appellant open the tailgate. The officer testified that the appellant had trouble with the keys and his hands were shaking. The officer, upon swinging open the tailgate, felt that it was surprisingly heavy. He knocked on the tailgate; it sounded solid rather than hollow. The officer noted that one corner of the plastic cover on the interior side of the tailgate was loose. When the officer lifted the corner and looked inside he observed a metal plate. The plate was held in place by screws that appeared not to be of factory origin. The officer obtained a screwdriver, unscrewed the metal plate, and discovered a package of cocaine. Thirteen packages of cocaine were removed from the tailgate.

Both the appellant and his wife denied any knowledge of the drugs and claimed they were the unwitting dupes of a man named Tony Montero. The appellant maintained that Montero, posing as a legitimate businessman visiting Florida for the Super Bowl, hired him to drive the car back to California.

The first issue raised by the appellant concerns the asserted bias of one of the jurors. On the morning of the first day of trial the court conducted *voir dire* for two different juries. The jury in the Diaz-Albertini matter was to be chosen first. Another jury was then to be chosen for an unrelated criminal case. Under the method employed by the trial court there could be an overlap between members of the two juries. This turned out to be the case.

During the first round of *voir dire* the court inquired whether any of the veniremen were associated with law enforcement officers. One of the potential jurors, Paul Chavez, remained silent through this entire first round of questioning. He was ultimately chosen as a juror in the Diaz-Albertini case. The appellant's attorney and the wife's attorney then left the courtroom after their jury was selected.

[*] Honorable Clarence A. Brimmer, Chief District Judge for the District of Wyoming, sitting by designation.

The *voir dire* then began in the unrelated case. During this round of questioning Mr. Chavez responded to one of the court's questions that he was closely acquainted with the state police. There was no follow-up questioning. After the jury was chosen in the second case, the attorneys in that case also left the courtroom. One of them, the Federal Public Defender for the District of New Mexico, talked to the appellant's attorney outside the courtroom. She told him that one of the jurors on his panel, namely Mr. Chavez, stated during *voir dire* in her case that he was acquainted with state police officers. The Public Defender had been present during the Diaz-Albertini *voir dire* and recognized that Mr. Chavez was one of the jurors selected for that case.

At the subsequent hearings held by the trial judge on motions for a new trial the Public Defender testified that she had then told appellant's attorney:

> " 'There is a juror on your panel, on your jury, who said, in our *voir dire*, that he had a close acquaintance with the state police in Moriarty,' and I may have left it at that or I may have said, 'So you may want to do something about it,' or, 'You may want to get him off your jury,' or something of that nature and I left."

Record, Vol. IX at 14.

The appellant's trial counsel at the hearings never really disputed the Public Defender's version of events. Rather, he argued that he did not recall the exact nature of the problem concerning the composition of the jury. He testified that he decided at the time of the conversation with the Public Defender to examine the transcript of the second *voir dire* "should we have a conviction." Record, Vol. IX at 4. Trial counsel made no attempt to advise the court that there might be a problem and the case went to trial with Mr. Chavez on the jury.

After the jury found the appellant and his wife guilty, both of them moved for acquittal or, in the alternative, for a new trial. The asserted bias of Mr. Chavez was not one of the grounds for the new trial

motion. Rather, the motion was based on the sufficiency of the evidence and the search and seizure issues. Some 22 days later the appellant and his wife filed a "Supplement" to the new trial motion. It was at this late date that the whole issue of Mr. Chavez' bias was first raised. The defendants asserted that their due process right to a fair trial had been denied by the presence of Mr. Chavez on the jury. The trial court held several hearings to resolve the issue.

The court heard testimony from the Public Defender and the appellant's trial counsel on the conversation that took place between them outside the courtroom. The court also questioned the juror. It developed that Mr. Chavez was the godfather of one of the children of the state police officer who testified at the suppression hearing. That officer did not testify at trial. He was, however, the supervising officer at the roadblock and his name was mentioned in the course of the case. Because of the small size of Moriarty, New Mexico Mr. Chavez was also acquainted with several other officers involved in the roadblock and the subsequent search and arrest.

After the hearings the trial court determined that appellant's counsel was put on notice of the problem with the juror before the jury was impaneled and trial began. The court found that counsel made a conscious decision to postpone raising the matter until after a conviction resulted. Accordingly the appellant, through the actions of his counsel, purposefully and knowingly waived his right to object to the presence of the juror.

The court denied the appellant's motion for a new trial. The court however granted the new trial motion made by the appellant's wife. There was no evidence that her attorney had knowledge before trial of the conversation regarding juror Chavez. Appellant now asserts that the trial court abused its discretion in denying his new trial motion. The appellant argues that the juror was clearly biased, and that he did not become aware of the bias until well after trial so that no waiver occurred.

The decision in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 indicates that there may be situations where the litigant waives any objection to the composition of the jury by failing to pursue the matter in timely fashion. *Id.* 104 S.Ct. at 847 n. 2. This is consistent with the general rule that a defendant, by accepting a jury, waives his right to object to the panel. *Leggroan v. Smith*, 498 F.2d 168, 171 (10th Cir.). When the basis for a challenge to a particular juror can be timely shown, the failure to object at the trial's inception constitutes a waiver of the right to attack the composition of the jury. *United States v. Harris*, 530 F.2d 576, 579 (4th Cir.); *United States v. Ragland*, 375 F.2d 471, 475 (2d Cir.). This court held in *United States v. Ramsey*, 726 F.2d 601, 604 (10th Cir.), that when a litigant is aware of alleged juror misconduct during trial it is ineffective to raise the issue for the first time after trial. *See also United States v. Carter*, 433 F.2d 874, 876 (10th Cir.). There is no reason to apply a different standard when the possible bias of a juror is known prior to trial. The litigant cannot transform a tactical decision to withhold the information from the court's attention into a trump card to be played only if it becomes expedient. The duty is to disclose. We have recently reiterated our position that attorneys may not sit idly by, observe the occurrence of error, and then fail to bring the matter promptly to the attention of the trial court. *See Chevron, U.S.A., Inc. v. Hand*, 763 F.2d 1184 (10th Cir.); *Gundy v. United States*, 728 F.2d 484, 488 (10th Cir.). Had the appellant raised the matter promptly the trial court would have had the opportunity to remedy the problem. *See United States v. Ragland*, 375 F.2d 471, 475 (2d Cir.).

After holding hearings the trial court made factual findings pertaining to the conversation between the appellant's attorney and the Public Defender. The court found that the Public Defender told the attorney that Mr. Chavez stated in the second *voir dire* he was closely acquainted with state police officers. We see no reason not to accept this finding. *Cf. Anderson v. City of Bessemer City*, —— U.S. ——, ——, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518.

The trial court's finding concerning what the Public Defender said is significant on the basic issue. We agree with the trial court that the attorney was then put on notice of potential juror bias and that he chose to wait to see whether there was a conviction before he would use it. This finding fixes the time when appellant became aware of the juror's possible bias.

This notice or awareness was of sufficient specificity to support a conclusion of waiver and to limit the time for a Rule 33 motion. It was not a general hint but as the Public Defender testified this particular juror at *voir dire* stated he had "a close acquaintance with the state police in Moriarty." The trial court found this was a significant matter to Mr. Clay, the trial attorney for appellant. The trial court said: "In fact, Mr. Clay testified he knew it was significant enough that he wanted to look into it after a conviction." Record, Vol. X at 33.

This is the very same point appellant also seeks to raise as "newly discovered evidence" to permit a late Rule 33 motion. But again, the trial court found that Mr. Clay had deliberately withheld the information known before the jury for appellant's case was impaneled. Since it was known before trial the time to raise the point had long passed when appellant's second motion was filed. We must conclude as did the trial court that appellant waived his right to challenge the presence of this juror on his jury and furthermore the attempt to raise the issue in a late Rule 33 motion must fail.

Appellant next contends that the trial court erred in denying his motion to suppress the fruits of the search. The appellant argues he had standing to challenge the legality of the search, that the roadblock was pretextual, and that coercion tainted his consent.

The trial court found that the appellant had standing. In the absence of any indication that the court's finding was clearly erroneous, we will defer to that determination. *United States v. Obregon*, 748 F.2d 1371 (10th Cir.). During the suppression hearing the government effectively conceded the issue.

The appellant next asserts that the roadblock was pretextual and violated *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660. The Court there stated that

"except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment."

The Court there also stated that its holding did

"not preclude the ... [states] from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. *Questioning of all oncoming traffic at roadblock-type stops is one possible alternative.*"

*Id.* (Emphasis added.)

█ On several occasions this court has approved the operation of roadblocks set up to make routine checks of licenses and registrations. *See United States v. Obregon*, 748 F.2d 1371 (10th Cir.); *United States v. Prichard*, 645 F.2d 854 (10th Cir.). In both cases we sanctioned the same type of roadblock in the same general area of New Mexico. All cars were stopped except when traffic on the interstate backed up to dangerous proportions. In the present case we can find nothing in the facts to distinguish this roadblock from those found constitutional in *Obregon* and *Prichard*. Thus we conclude the roadblock was not pretextual. Police officers are not required to close their eyes to indications of possible wrongdoing that are disclosed at roadblocks. *See United States v. Obregon*, 748 F.2d at 1376.

Finally, the appellant argues that he did not voluntarily consent to the search of the station wagon. This court has recently examined in detail the legal principles underlying consensual searches and the effects of coercion. *United States v. Gonzalez*, 763 F.2d 1127 (10th Cir.); *United States v. Recalde*, 761 F.2d 1448 (10th Cir.).

█ A warrantless search is, of course, not unreasonable when the party in control voluntarily consents. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854. Nonetheless, the government has the burden of showing that consent was voluntary. *United States v. Mendenhall*, 446 U.S. 544, 557, 100 S.Ct. 1870, 1878, 64 L.Ed.2d 497. We have recently considered the nature of the government's burden in *United States v. Recalde*, 761 F.2d at 1453, and earlier in *United States v. Abbott*, 546 F.2d 883, 885 (10th Cir.). In applying these standards we must conclude that the appellant voluntarily consented to the search. We will accept the findings of the trial court unless they are clearly erroneous. *United States v. Cooper*, 733 F.2d 1360, 1364 (10th Cir.). The trial court found that the appellant was an educated individual, fluent in English, and fully capable of understanding the terms and consequences of the consent to search form. The arresting officer testified that the appellant first consented verbally to the initial request to search. This consent was followed by the execution of the written consent form. While the appellant offered a different version of events, the trial court assessed the credibility of the witnesses and the weight to be given their testimony. We will not substitute our judgment on these matters for that of the trial court in the absence of any clear indication the court erred.

There is no indication in the record that the appellant's will was overborne in any way by the police. The record indicates, and the appellant does not dispute, that the police were civil throughout the entire inci-

dent. At no time were any threats, implied or express, made. The interval between the initial taking of the appellant's driver's license and the request to search was so short that it cannot be said the kind of implied duress recently condemned in *Recalde* took place.

In sum, the appellant was stopped at a constitutionally acceptable roadblock. The brief initial detention on the highway's median was justified by an articulable and reasonable suspicion that the car might be stolen. The suspicion logically flowed from the discrepancy between the Florida driver's license and the California registration. After the negative NCIC response it was permissible for the officer to ask to search. The appellant freely assented and the contraband was discovered. We find no error in this chain of events.

AFFIRMED.