UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles Thomas WALRAVEN,
Defendant–Appellant.

No. 89–8005.

United States Court of Appeals,
Tenth Circuit.

Dec. 27, 1989.

John Barksdale, Asst. U.S. Atty. (Richard A. Stacy, U.S. Atty., Lisa E. Leschuck, Asst. U.S. Atty., Maynard D. Grant, Sp. Asst. U.S. Atty., on the brief), Cheyenne, Wyo., for plaintiff-appellee.

Kenneth M. Mogill, Detroit, Mich., for defendant-appellant.

Before BALDOCK and EBEL, Circuit Judges and CONWAY, District Judge.*

---

* Honorable John E. Conway, United States District Judge for the District of New Mexico, sitting by designation.

BALDOCK, Circuit Judge.

Plaintiff-appellant, Charles Walraven, entered a conditional plea of guilty under Fed.R.Crim.P. 11(a)(2) in the federal district court to possession with intent to distribute cocaine as proscribed by 21 U.S.C. § 841(a)(1). Walraven's plea was conditioned upon his right to bring this appeal challenging the district court's denial of his motion to suppress evidence of two kilograms of cocaine which Wyoming state officials obtained in a warrantless search of his vehicle. *United States v. Pitchford*, 699 F.Supp. 260 (D.Wyo.1988). Walraven specifically challenges the constitutionality of the authorities' (1) registration check on his vehicle, (2) initial stop of his vehicle, (3) detention of his person, and (4) search of his vehicle. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

I.

Following an evidentiary hearing on Walraven's motion to suppress, the district court entered thorough findings of fact into the record as required by Fed.R. Crim.P. 12(e). Based on its view of the testimony and the various witnesses' credibility, the court found that the government had met its burden of proving the constitutionality of its actions. *See United States v. Carreon*, 872 F.2d 1436, 1441 (10th Cir. 1989). While Walraven denied government witnesses' account of the facts, we are not empowered to substitute our judgment for that of the district court absent clear error. *See United States v. Diaz–Albertini*, 772 F.2d 654, 658 (10th Cir.1985), *cert. denied*, 484 U.S. 822, 108 S.Ct. 82, 98 L.Ed.2d 45 (1987). In reviewing the district court's findings, we are mindful that " '[a]t a hearing on a motion to suppress, the credibility of the witnesses and the weight to be given the evidence together with the inferences, deductions and conclusions to be drawn from the evidence, are to be determined by the trial judge.' " *Id.* (quoting *United States v. Pappas*, 735 F.2d 1232, 1233 (10th Cir.1984)). Accordingly, we accept the evidence in a light most favorable to the district court's determination, *United States*

*v. Medlin*, 842 F.2d 1194, 1198 (10th Cir. 1988), and decline to disturb its findings because they are not clearly erroneous. *See United States v. Rivera*, 867 F.2d 1261, 1262–63 (10th Cir.1989).

The district court's factual findings, which harbor ample support in the record, may be briefly summarized: On the morning of March 26, 1988, Deputy Robert Debree of the Albany County, Wyoming, Sheriff's Department, observed two men in a 1983 brown Cadillac bearing the Tennessee license plate CYR 490 traveling east on I–80 near Laramie. Debree, a seven year veteran of law enforcement who routinely ran license and registration checks on out-of-state vehicles, decided to do so on the Cadillac. A license check with the FBI's National Crime Information Center (NCIC) proved negative. The registration check, however, indicated that the plate number belonged to a 1988 Toyota. Debree activated his overhead lights in an attempt to stop the Cadillac. After receiving two blasts of Debree's siren and traveling an additional one and a half miles, the Cadillac pulled over. Debree testified as follows regarding his pursuit:

Counsel: And can you tell us what happened after you activated the emergency lights with respect to what you observed the occupants in the car doing?

Debree: What I recall, both the driver and the passenger were speaking to each other. The passenger of the vehicle at that time from what I can remember placed his hand on the rear view mirror, seemingly adjusting it to see behind him. At one point the passenger even looked over his left shoulder directly at me.

Counsel: Did this seem unusual to you based on your experience?

Debree: Yes.

Counsel: Why is that?

Debree: Well, I felt a little uncomfortable, first of all, if he could see me. The vehicle wasn't pulling over immediately. They both seemed to be conferring between each other, and they

were not pulling over for me immediately.

Rec. vol. II at 43. Based on his observations, Debree radioed for assistance because the men matched a "drug courier" profile and acted "suspicious."

Debree approached the Cadillac to inform its driver, Barry Pitchford, of the discrepancy in the registration check. Because Walraven, a passenger in the vehicle, admitted ownership, Debree asked both men to produce their driver's license as well as the vehicle's registration. After running a negative check with the NCIC on the men, Debree again ran a license plate check. Although Debree reported the plate as CYR 490, he noted that the dispatcher recorded the plate as CYR 409. A transcript of Debree's correspondence with the dispatcher during his pursuit of the Cadillac indicated that the dispatcher had made the same mistake at least two previous times without Debree's knowledge. This time, however, Debree corrected the dispatcher and the license plate was properly identified as belonging to the Cadillac.

Between two and three minutes later, Debree's backup, Sergeant Lance Robinson arrived. With Robinson positioned at the rear right side of the Cadillac, Debree again approached the vehicle to return the licenses and registration. When Debree asked if they were transporting any illegal narcotics or firearms, both men responded "no." Debree then requested to search the Cadillac. According to Debree, Pitchford replied: "I don't know why you would want to, but I imagine you can go ahead." Walraven thereafter said: "Sure, go ahead." Debree also testified that when he asked to search the trunk, Walraven pushed the release button inside the glove box and Pitchford opened the truck. Inside the trunk, Debree recovered a blue satchel which contained two kilograms of cocaine. Both men were taken into custody and transported to the Albany County jail.

## II.

■ Walraven initially contends that Debree's random registration check on his out-of-state vehicle violated the Constitution's privileges and immunities clause, U.S. Const. art. IV, § 2, and equal protection clause, U.S. Const. amend. XIV, § 1, by impeding his right to interstate travel. We disagree. While the right to travel freely interstate is a "basic right" embodied in the Constitution, *United States v. Guest*, 383 U.S. 745, 758, 86 S.Ct. 1170, 1178, 16 L.Ed.2d 239 (1966), we do not believe that this right was abridged in this instance. The right to interstate travel protects individuals from "statutes, rules, or regulations which unreasonably burden or restrict this movement." *Shapiro v. Thompson*, 394 U.S. 618, 629, 89 S.Ct. 1322, 1329, 22 L.Ed.2d 600 (1969). Moreover, because they are in plain view, no privacy interest exists in license plates. *United States v. Matthews*, 615 F.2d 1279, 1285 (10th Cir.1980). Debree's registration check on Walraven's Cadillac neither unreasonably burdened nor restricted Walraven's travel. Unless a registration check reveals information which raises a reasonable suspicion of criminal activity, the subject remains unaware of the check and unencumbered. As the district court aptly noted: "In view of the manner in which the license checks are conducted, the extent of any intrusion upon the traveling public ... hardly rises to an impermissible interference with the fundamental right to travel from state to state." *Pitchford*, 699 F.Supp. at 264.

## III.

■ Walraven next asserts that Debree's initial stop of the Cadillac violated the fourth amendment's proscription against unlawful seizures. According to Walraven, Debree's failure to remedy the dispatcher's incorrect relay of the Cadillac's license plate until after the deputy had stopped the vehicle to inquire as to its registration was an unreasonable mistake of fact, or in the alternative, merely support for a pretextual stop. The district court disagreed:

Notwithstanding the officer's failure to detect the dispatcher's error on three separate occasions within a three and a half minute period, he unquestionably

acted in good faith upon the report when he pulled defendants' vehicle over to investigate the perceived registration discrepancy.... [T]here existed in his mind a belief which would alert a reasonable person that some sort of crime had been or was in the process of being committed.

*Pitchford,* 699 F.Supp. at 263–64.

The district court implicitly recognized that whether Debree's failure to detect the dispatcher's error tainted his stop of the Cadillac and subsequent discovery of the cocaine depended upon the objective reasonableness of his inaction. *See United States v. Leary,* 846 F.2d 592, 606 n. 24 (10th Cir.1988) (term "good faith" used despite objective nature of inquiry); *Brierley v. Schoenfeld,* 781 F.2d 838, 841 (10th Cir. 1986) (officer's good faith belief must be reasonable). In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court explained that use of the exclusionary rule would not deter improper police conduct where an officer engaged in objectively reasonable law enforcement activity: "In short, where the officer's conduct is objectively reasonable, 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way.'" *Id.* at 919–20, 104 S.Ct. at 3418–19 (quoting *Stone v. Powell,* 428 U.S. 465, 539, 96 S.Ct. 3037, 3073, 49 L.Ed.2d 1067 (1976) (White, J., dissenting)). Of course, the burden is on the government to convince the district court that the officer's conduct was objectively reasonable. *See United States v. Cook,* 854 F.2d 371, 373 (10th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989).

Mindful of these principles, we sustain the district court's finding that Debree acted in an ostensibly reasonable manner in failing to identify the dispatcher's mistake. Based upon the circumstances as he perceived them, Debree had an "articulable and reasonable suspicion" that his stop of the Cadillac would reveal the existence of a crime. *See Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979). The court explicitly found that because Debree was concentrating on the Cadillac he did not hear the dispatcher in-

correctly repeat the license plate information. *Pitchford,* 699 F.Supp. at 261. Debree testified that he was concentrating on the road as well. Given Debree's testimony, the district court acted well within its authority in finding that Debree's failure to correct the dispatcher was objectively reasonable and not a pretext for his subsequent actions.

### IV.

■ Walraven argues that even if Debree's initial stop of the Cadillac was lawful, no legal basis existed for his continuing detention once Debree confirmed the vehicle's registration. Walraven's continuing detention is best described as an investigative detention. As we explained in *United States v. Espinosa,* 782 F.2d 888, 890 (10th Cir.1986):

> While an investigative detention is a seizure within the meaning of the Fourth Amendment, it need not be supported by probable cause. An investigative detention is justified where specific and articulable facts and rational inferences from those facts give rise to reasonable suspicion that a person has committed or is committing a crime.

(citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). In determining the reasonableness of an investigative detention, "common sense and ordinary human experience must govern over rigid criteria." *United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985).

Aside from the registration discrepancy, the district court cited the suspicious actions of Walraven and Pitchford, the men's failure to promptly stop the Cadillac in response to Debree's flashing lights, their nervous mannerisms, and Debree's law enforcement experience as support for its finding that Debree reasonably believed the men had committed or were committing a crime. The district court justified Debree's detention of the men for the two to three minutes before Sergeant Robinson arrived as simply prudent in view of De-

bree's perceived threat to his own well-being. *Pitchford,* 699 F.Supp. at 263–64.

That the fourth amendment "does not require police officers to close their eyes to suspicious circumstances" is beyond peradventure. *Espinosa,* 782 F.2d at 891. Balancing the nature and quality of the brief detention on Walraven's constitutional guarantees against the governmental interests in crime prevention and detection, as we must under *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983), we conclude that the character and extent of Walraven's detention was minimally intrusive and, thus outweighed by these governmental interests. After resolving the registration problem, Debree sought only to maintain the status quo momentarily before questioning the men in the presence of Sergeant Robinson. *See Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). We note that Debree requested Sergeant Robinson's assistance *prior* to resolving the registration discrepancy. Once that discrepancy was corrected, Debree certainly was entitled to request permission to search the vehicle. *Diaz–Albertini,* 772 F.2d at 655 (officer's request to search vehicle permissible following negative NCIC check). The fact that Debree waited a moment for his backup to arrive before asking Walraven to consent to a search of the Cadillac was nothing more than reasonable police procedure.

### V.

Lastly, Walraven submits that he did not consent to Debree's search of the Cadillac despite Debree's testimony to the contrary. No one doubts that an official may search a vehicle without probable cause if voluntary consent is given. *E.g., Rivera,* 867 F.2d at 1265. Furthermore, Walraven does not dispute that "voluntariness" in consent matters is a question of fact to be determined from the totality of the circumstances. *E.g., Espinosa,* 782 F.2d at 892. Given these well-established precepts and the conflict between Debree's and Walraven's testimony, we need only repeat our words in *United States v. Gu-*

*glielmo,* 834 F.2d 866, 869 (10th Cir.1987): "It is not this court's function to determine which of these parties was telling the truth. That was a matter for the trial judge, who heard the testimony of the witnesses." *See Pitchford,* 699 F.Supp. at 264–65.

AFFIRMED.