**STATE of Missouri, Respondent,**

v.

**Frank James KOVACH, Appellant.**

No. 17749.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 4, 1992.

Motion for Rehearing or to Transfer
Denied Sept. 28, 1992.

Robert G. Duncan, Kansas City, for appellant.

Thomas E. Mountjoy, Pros. Atty., Susan F. Colburn, Asst. Pros. Atty., Springfield, for respondent.

FLANIGAN, Chief Judge.

The trial court, sitting without a jury, found defendant guilty of possessing marijuana, a class A misdemeanor, § 195.202.3,[1]

---

1. All references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

as amended 1989, and he was sentenced to a term of 30 days in the county jail. Execution of the sentence was suspended and defendant was placed on two years' probation. Defendant appeals.

In general, defendant contends that the trial court erred: (1) in denying his motion to suppress evidence consisting of "the alleged marijuana" and his oral statements; and (2) in denying his motion for judgment of acquittal.

The state's two witnesses were Trooper Leslie Crowe and Trooper Timothy Russett of the Missouri State Highway Patrol. Crowe testified that at approximately 1:30 a.m. on July 10, 1990, he was on duty and observed a 1990 Ford van traveling west on Interstate 44 at a speed of 79 miles per hour in a 65-mile-per-hour speed zone. The van did not stop immediately upon Crowe's activation of his emergency lights. It went to the shoulder and continued for 100 yards at a slow pace before stopping. "He was very hesitant to stop."

Crowe stopped his patrol car and talked to the driver of the van, Warfield, who was its owner. Warfield was unusually nervous, his hands were shaking uncontrollably, he had a stutter in his voice, and he would not maintain eye-to-eye contact with Crowe. Defendant was lying on a bunk in the back of the van.

Crowe had Warfield step out of the van and patted him down for weapons. The reason Crowe did that was "an accumulation of all the things, the fact that he was hesitant about pulling off on the shoulder." Crowe looked at the odometer because Warfield appeared to be unusually nervous and "the fact that the van was brand new." The odometer showed 28,000 miles, "an excessive amount for that model." On cross-examination, Crowe testified he "was very suspicious of and concerned of the possible presence of weapons in the vehicle."

Crowe stepped into the van and felt around the driver's seat for weapons. Crowe testified that on every traffic stop he made a visual search for weapons "but as far as a physical search under the seats, as I did here, I don't do that on every stop.

I did it here because of an accumulation of all the things, the driver being nervous, the odometer reading." He looked under the seat and behind it. Crowe asked defendant where he was headed and defendant's response was, "to visit friends in Texas."

Crowe then took Warfield to the patrol car where Crowe issued a summons for speeding. He asked Warfield what his destination was and Warfield replied, "to look for work in Texas." Crowe testified: "I felt I was in a very unsafe position, especially with the driver being back in the patrol car and the passenger being in the van where there were numerous items of clothing."

Crowe went back to the van and talked with defendant. Crowe asked defendant if there were any weapons or contraband in the vehicle and he said "no." Crowe asked defendant for permission to search the van and a suitcase which was lying between the end of the bunk and the front seats. Defendant's response was "Go ahead." Defendant said, "Let me open [the suitcase] for you." Defendant opened the snaps on the suitcase. Crowe asked defendant to step back because Crowe thought there might be a weapon in there.

Crowe opened the suitcase and found several items of clothing and a brown paper bag which contained $40,500 in cash. Crowe said defendant was not under arrest at that time. He asked defendant what the money was for and defendant said, "You never know, when you are traveling." Crowe asked defendant why he needed that amount of money and defendant "changed his story a little bit." Defendant told Crowe they were going to buy used cars in Texas. Crowe asked defendant about the ownership of the money and defendant said half of it was his and half of it was Warfield's.

Crowe took the money and returned to the patrol car where he talked with Warfield. Crowe showed Warfield the money and Warfield's eyes "got rather large." Crowe asked Warfield who owned the money, and Warfield said he did not know the money was there. Warfield said it was not his money.

Crowe radioed for backup, and a county officer arrived. Crowe told the officer to keep an eye on Warfield and then went to the van "to conduct a more thorough search for weapons." Crowe found a clear plastic bag in the console area underneath the dashboard. The bag contained "what appeared and smelled to be marijuana plant material and a package of cigarette rolling papers, club rolling papers."

Crowe testified that he had specialized training in the detection and recognition of marijuana at the Highway Patrol Academy. As a patrolman, Crowe had been in contact with marijuana "on many occasions, between 75 and 100 occasions." Crowe testified that state's Exh. 1, a brown envelope, was the envelope in which he secured "the marijuana."

Warfield and defendant were taken to patrol headquarters where defendant was given the Miranda warnings and placed under arrest. Crowe asked defendant if the marijuana belonged to him, and defendant said that he had bought it from someone in Michigan. Defendant said the marijuana was his and for his personal use. Crowe testified that Interstate 44 has been routinely used to transport large quantities of marijuana or cocaine.

Trooper Russett was called to patrol headquarters to assist Trooper Crowe with the investigation. Defendant told Russett that the money was his and Warfield's. He wasn't sure of the exact amount but he thought it was about 50/50. He also said the money was to be used to purchase used cars once they got to Texas. Defendant told Russett that "the marijuana was his and was for his personal use and that he could not make any statement as to whether Warfield knew or did not know of the presence of the marijuana."

Prior to the trial, defendant filed a written "Motion to Suppress Evidence." The motion sought to suppress the marijuana taken from the van. There was no pretrial hearing on the motion, and defendant did not request one.

At the outset of the trial, defense counsel asked the court to take the motion to suppress "with the case." He also made an oral motion to suppress defendant's oral statements "as fruits of an illegal detention." The prosecutor agreed that both motions would be taken with the case.

At the end of the trial, the court overruled the motions. The court made no findings of fact or conclusions of law in its ruling on the motion to suppress, and none had been requested. Other than cross-examination of the state's two witnesses, defendant offered no evidence.

Defendant's first point is that the trial court erred in denying his written motion to suppress the marijuana and in denying his oral motion to suppress his oral statements, in violation of his Fourth Amendment rights, because: (a) the marijuana was seized after an unconstitutional warrantless search of the vehicle; (b) the statements were made in the absence of Miranda warnings to defendant; and (c) both the marijuana and the statements were the fruits of an illegal detention of defendant.

■ On review of the trial court's ruling on the motion to suppress, this court determines whether there was sufficient evidence to support the trial court's ruling. The weight of the evidence and the credibility of the witnesses are for the trial court's determination. *State v. Burkhardt,* 795 S.W.2d 399, 404 (Mo. banc 1990); *State v. Marshell,* 825 S.W.2d 341, 346 (Mo.App. 1992). "Only if the trial court's judgment is clearly erroneous will an appellate court reverse." *State v. Milliorn,* 794 S.W.2d 181, 183 (Mo. banc 1990). If the trial court's ruling "is plausible in light of the record viewed in its entirety," this court "may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 184. Where, as here, there is no factual dispute, determination of the reasonableness of a search, under the Fourth Amendment, is a question of law. *U.S. v. Walker,* 941 F.2d 1086, 1090 (10th Cir.1991); *U.S. v. Pena,* 920 F.2d 1509, 1513–1514 (10th Cir.1990); *U.S. v. Arango,* 912 F.2d 441, 444 (10th Cir.1990).

### Of prong (a)

In *State v. Childress*, 828 S.W.2d 935, 939–940 (Mo.App.1992), the court said:

The initial inquiry is whether *defendant* suffered violation of any Fourth Amendment right.

Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. A person who is aggrieved by an *illegal* search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections.

*Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978) (emphasis added) (citations omitted). In *Rakas*, the Court rejected the so-called "target theory" under which any criminal defendant at whom a search was "directed" would have standing to contest the legality of that search and object to the admission at the trial of evidence obtained as a result of the search. In *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 2551, 65 L.Ed.2d 619 (1980), the Court said: "In *Rakas*, this Court discarded reliance on concepts of 'standing' in determining whether a defendant is entitled to claim the protections of the exclusionary rule. The inquiry, after *Rakas*, is simply whether the defendant's rights were violated by the allegedly illegal search or seizure."

A prosecutor may simultaneously maintain that a defendant criminally possessed the seized good, but was not subject to a Fourth Amendment deprivation, "without legal contradiction." *Salvucci*, 448 U.S. at 90, 100 S.Ct. at 2552.

■ The mere status of being a passenger in a vehicle does not accord the passenger a legitimate expectation of privacy in the vehicle entitling him to assert a Fourth Amendment challenge to the search of the vehicle. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978); *U.S. v. Cardona*, 955 F.2d 976, 981[4] (5th Cir. 1992); *U.S. v. Mitchell*, 951 F.2d 1291, 1298–1299 (D.C.Cir.1991); *U.S. v. Greer*, 939 F.2d 1076, 1092, 1093[27, 28] (5th Cir. 1991); *U.S. v. Jefferson*, 925 F.2d 1242, 1249[3] (10th Cir.1991); *U.S. v. Erwin*, 875 F.2d 268, 271[2] (10th Cir.1989).

In *Cardona*, the court said, at 981:

Cardona has no standing to challenge any search of the vehicle in question. The record reflects only that the automobile was registered to a non-passenger in Bronte, Texas. At best, the record reflects the vehicle belonged to Ruiz–Gonzales. Quite simply, Cardona, as a non-owning passenger, lacks standing to raise the Fourth Amendment issues he seeks to raise here. *See Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

In *Mitchell*, the court said, at 1298:

In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court set out the standard for lower courts to apply in determining whether a defendant had an expectation of privacy sufficient to allow him to maintain a Fourth Amendment challenge. The defendants in *Rakas* were driving a pick-up truck that they did not own. The police stopped the truck, ordered the occupants out, and, on searching the vehicle, discovered a rifle and shells. The defendants did not admit ownership of the weapon.

The Court stated that the question of when a defendant may challenge a search turns on "whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." *Id.* at 140, 99 S.Ct. at 429. The Court found that the defendants could not challenge the search because they "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized." *Id.* at 148, 99 S.Ct. at 433. A passenger in a car does not possess such an interest simply because

he is lawfully present in the automobile. Defendants must adduce facts demonstrating a "*legitimate* expectation of privacy protected by the Fourth Amendment." *Id.* at 150, 99 S.Ct. at 434. (Powell, J., concurring) (emphasis in the original).

It should be noted that in *Rakas* the property seized consisted of a rifle and shells. The court pointed out that the defendants had not asserted an interest in that property, as distinguished from the vehicle itself.

In *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), defendant placed drugs in a companion's purse. He argued that his admission of ownership of the *drugs* gave him a cognizable expectation of privacy. In rejecting this claim, the court said, 448 U.S. at 105–06, 100 S.Ct. at 2562:

> While petitioner's ownership of the drugs is undoubtedly one fact to be considered in this case, *Rakas* emphatically rejected the notion that "arcane" concepts of property law ought to control the ability to claim the protections of the Fourth Amendment.... Had petitioner placed his drugs in plain view, *he would still have owned them,* but he could not claim any *legitimate* expectation of privacy. (Emphasis added.)

Defendant had no legitimate expectation of privacy in Warfield's vehicle, and defendant was not entitled to challenge the search of the vehicle on Fourth Amendment grounds.

Prong (a) has no merit.

## Of prong (b)

█ The statements to which this prong refers are those in which defendant told Trooper Crowe that the marijuana belonged to him, that he had bought it from someone in Michigan, and that it was for his own personal use. Somewhat similar statements were made by defendant to Trooper Russett.

Defendant's written motion to suppress was directed to the "items taken from the person or from an automobile in which the defendant was present." The motion made no mention of any statements elicited from defendant.

Prong (b) is both factually unfounded and unpreserved. The only statements offered by the state were made by defendant after he had received the Miranda warnings. The only oral objection made by defendant, prior to the admission of the challenged statements, was "that the oral statements were fruits of an illegal detention." Only that objection has been preserved for appellate review, *State v. Hart,* 805 S.W.2d 234, 238[6] (Mo.App.1991), and it will be considered under prong (c).

## Of prong (c)

Trooper Crowe testified that after he had issued the summons to Warfield in the patrol car, it was Crowe's intention to allow Warfield to "continue on" without taking him to headquarters, "assuming [Crowe] found nothing in the automobile." This occurred after Crowe's initial search for weapons in the van and prior to the two follow-up searches, the first disclosing the money and the second disclosing the marijuana.

Defendant argues, in challenging his detention during the course of the search for weapons which disclosed the money, that Crowe "did not articulate any specific facts that would support a reasonable conclusion that there were weapons in the automobile or that either defendant or Warfield was about to gain access to them and assault the officer. Crowe testified that it was his intention to release Warfield and to allow them to drive on unless he found something in the automobile. Clearly the detaining of defendant and Warfield was a pretext to allow the officer, out of his curiosity, to search the van." Prong (c) must be considered in light of Fourth Amendment principles.

█ The Fourth Amendment is not a guarantee against all searches and seizures but only against unreasonable searches and seizures. *U.S. v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). The authority and limits of the Fourth Amendment apply to investigative stops of

vehicles. *Id.* There is a dual inquiry for evaluating the reasonableness of an investigative stop: whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Id.*

 If an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop. *Id.* at 1575. There is, however, no rigid time limitation on investigative stops. Although the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion, it is necessary to consider the law enforcement purpose to be served by the stop as well as the time reasonably needed to effectuate those purposes. *Id.* at 1575.

 "Much as a 'bright line' rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria." *Id.* In assessing whether a detention is too long in duration to be justified as an investigative stop, it is appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. "A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *Id. Post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. The question, however, is not simply whether some alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it. *Id.* at 1575–1576.

 New facts uncovered during initial detention may justify escalation of the intrusion and further detention. *U.S. v. Kye Soo Lee*, 898 F.2d 1034, 1040 (5th Cir.1990).

*United States v. Contreras–Diaz*, 575 F.2d 740, 744–745 (1978).

 Where, as here, the driver of the vehicle is lawfully stopped, it is permissible, under the Fourth Amendment, for the officer to order the driver to get out of the car. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977). An officer is justified in conducting a limited search for weapons once he has reasonably concluded that the person whom he has legitimately stopped might be armed and presently dangerous. *Id.* 434 U.S. at 111–12, 98 S.Ct. at 334. The officer is justified to search for weapons when the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate. *Id.* 434 U.S. at 112, 98 S.Ct. at 334.

"[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968).

 An officer may conduct a protective pat-down for weapons if a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. *U.S. v. Holifield*, 956 F.2d 665, 667 (7th Cir.1992). See *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968).

"[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons."

*Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983).

 The absence of a weapon on the person of the driver does not, as a matter

of law, make continuing apprehension of danger unreasonable. *U.S. v. Holifield*, 956 F.2d at 667–668. The fact that the officer anticipated allowing the driver to reenter the vehicle may be considered in determining whether a protective search of the vehicle is reasonable. *Id.* at 668–669. When a weapon search of the passenger compartment of a vehicle is reasonable, the search may include closed containers shaped such that they could contain a weapon located within the passenger compartment. *Id.* at 669. In that context, a glove compartment is considered a container because it could contain a weapon. *Id.*

■ Protective searches are limited only in the sense that the officer conducting the protective search must first have a reasonable suspicion that the suspect is dangerous and the protective search must be directed only to locations which may contain a weapon and to which the suspect may have access. *Michigan v. Long*, 463 U.S. 1032, 1052, n. 16, 103 S.Ct. 3469, 3482, n. 16, 77 L.Ed.2d 1201 (1983). *U.S. v. Holifield*, 956 F.2d at 669.

■ An ordinary traffic stop is a limited seizure and is more like an investigative detention than a custodial arrest. Thus a Terry-stop analysis is appropriate. *U.S. v. DeWitt*, 946 F.2d 1497, 1501 (10th Cir.1991); *U.S. v. Walker*, 933 F.2d 812, 815 (10th Cir.1991). See *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984). An officer making a traffic stop may request a driver's license and registration, run a computer check, and issue a citation. Once the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning unless the officer has a reasonable suspicion of unlawful activity. *U.S. v. DeWitt, supra*, 946 F.2d at 1501–1502. Further questioning is allowed if the encounter has turned from a detention into a consensual encounter. This occurs when a reasonable person in the suspect's position would feel free to leave. *Id.*

■ Before an officer may compel a suspect to accompany him to police headquarters, the officer must have either probable cause to arrest or the voluntary consent of the suspect. *U.S. v. Kye Soo Lee*, 898 F.2d at 1041. See *Hayes v. Florida*, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985).

■ In connection with a lawful arrest of a driver, an officer has the right to search the vehicle for weapons or for contraband. *State v. Morr*, 811 S.W.2d 794, 798 (Mo.App.1991), citing *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). However, an incident search may not precede an arrest and serve as part of its justification. *State v. Hutchinson*, 796 S.W.2d 100, 103 (Mo.App.1990), citing *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

■ "[A] traffic stop significantly curtails the 'freedom of action' of the driver *and the passengers*, if any, of the detained vehicle." *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (emphasis added). Stopping an automobile and detaining its occupants constitute a seizure within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief. *Id.*

> [D]etention of a motorist pursuant to a traffic stop is presumptively temporary and brief. The vast majority of roadside detentions last only a few minutes. A motorist's expectations, when he sees a policeman's light flashing behind him, are that he will be obliged to spend a short period of time answering questions and waiting while the officer checks his license and registration, that he may then be given a citation, but that in the end he most likely will be allowed to continue on his way.

*Id.* 468 U.S. at 473, 104 S.Ct. at 3149.

> Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to

"investigate the circumstances that provoke suspicion."

*Id.* 468 U.S. at 439, 104 S.Ct. at 3150.

■ "A seizure occurs when a reasonable person would have believed he was not free to leave. *U.S. v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)." *U.S. v. Peoples,* 925 F.2d 1082, 1085 (8th Cir.1991). A person who reasonably assumes that he is not free to leave from the presence of the officer is under "seizure" even if he has not been arrested. *State v. Morr,* 811 S.W.2d at 798 n. 2, citing *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

A trooper who observes a car violating a posted speed limit has authority to stop the car for issuance of a traffic summons. § 304.010.2. While stopping the car for speeding does not alone provide probable cause, it does not preclude a full search of the automobile because the right to search is not dependent upon the right to arrest but upon the probable cause the officer has for belief that the contents of the automobile offend the law.

*State v. Childress, supra,* 828 S.W.2d at 943.

■ In many instances a traffic violation is a circumstance to consider among the elements giving rise to probable cause justifying a search of the automobile. *State v. Burkhardt, supra,* 795 S.W.2d at 405. "The fact that the speeding violation occurred on Interstate 44 is also an element to be considered. We take notice that the section of Interstate 44 is ... a notorious route used by drug traffickers bringing controlled substances into this state." *Burkhardt,* at 405.

■ Although, as discussed under prong (a), defendant was not entitled to challenge the search of Warfield's vehicle, he may object to the seizure of his own person as an illegal detention. *U.S. v. Arango, supra,* 912 F.2d at 446. *U.S. v. Erwin, supra,* 875 F.2d at 269–270. "[W]e reject any notion that a vehicular stop detains for Fourth Amendment purposes *only* the driver simply because the passenger may be free to depart." *Erwin,* at 270. (Emphasis added.) See *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975) ("Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of arrest").

In varying factual situations, challenges to evidence by a passenger in a vehicle based on his own unlawful detention, as distinguished from a challenge to the search of the vehicle, have been sustained, *State v. Becker,* 458 N.W.2d 604, 607 (Iowa 1990); *State v. Johnson,* 805 P.2d 761 (Utah 1991); *Bethea v. Com.,* 12 Va.App. 303, 404 S.E.2d 65 (1990), or denied, *U.S. v. Kye Soo Lee,* 898 F.2d 1034 (5th Cir.1990); *State v. Erwin,* 875 F.2d 268 (10th Cir. 1989); *Harris v. State,* 713 S.W.2d 773 (Tex.App.1986); *Lewis v. State,* 664 S.W.2d 345 (Tex.Cr.App.1984). If detention of defendant was unlawful, the seized marijuana is subject to exclusion under the "fruit of the poison tree" doctrine. *U.S. v. Erwin,* 875 F.2d 268, 269 n. 2 (10th Cir.1989); *U.S. v. Gonzalez,* 763 F.2d 1127, 1133 (10th Cir. 1985); *U.S. v. Durant,* 730 F.2d 1180, 1182 (8th Cir.1984). See *Wong Sun v. United States,* 371 U.S. 471, 474, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963).

■ Applying the foregoing principles, this court holds that the initial stop of the vehicle was lawful. The same is true of Crowe's initial search for weapons in the van prior to the issuance of the summons to Warfield. If the first follow-up search, which disclosed the money, was lawful, the circumstances then known to Crowe as a result of that search would have justified the second follow-up search which disclosed the marijuana. *State v. Burkhardt, supra; State v. Childress, supra.* The difficult issue is whether the first follow-up search was lawful.

Prior to the first follow-up search, Crowe had knowledge of the following facts: (a) the Ford van had been speeding; (b) the van came to a "very hesitant" stop after Crowe signalled it to stop; (c) Warfield was unusually nervous and would not maintain

eye-to-eye contact with Crowe; (d) defendant was lying on a bunk in the back of the van; (e) the van's odometer showed 28,000 miles; (f) the initial search of the vehicle disclosed no weapons; (g) the summons for speeding had been issued to Warfield.

■ Crowe in his testimony did not attempt to justify the first follow-up search for any reason other than a search for weapons. If the first follow-up search had not been conducted, according to Crowe, Warfield was free to go. Permitting him to go at that point, even though it entailed Warfield's reentry of the van, probably would not have represented as much of a threat to Crowe as the one which was presented when Crowe reentered the van for the first follow-up search. Defendant was in the van at that time and any weapon in it might well have been available to him.

The factual inquiry is whether the combination of facts (a), (b), (c), (d) and (e) discloses, in the language of *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983), that the police officer, Crowe, possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, would reasonably warrant the officer in believing "that the suspect is dangerous and the suspect may gain immediate control of weapons." The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. This court answers the inquiry in the negative.

Fact (a), standing alone, would not justify the first follow-up search and is of little significance. Although facts (b), (c) and (d) justified the initial search for weapons, that search was completed and no weapon was found. Fact (e) seems to be of questionable significance. Facts (f) and (g) weigh against the reasonableness of the first follow-up search.

This court holds that the first follow-up search was unreasonable, that the detention of defendant during the conducting of the first follow-up search was unreasonable, that the seized marijuana is subject to exclusion as fruit of the poison tree, and that the evidence, by reason of that exclusion, is insufficient to support the finding of guilt.

The judgment is reversed and the defendant is discharged.

SHRUM, P.J., concurs.

MAUS, J., files dissenting opinion.

MAUS, Judge, dissenting.

I respectfully dissent. "The Fourth Amendment does not require that the police obtain a warrant to search an automobile when they have probable cause to believe that it contains contraband or evidence of criminal activity. [footnote omitted]." *Warrantless Searches & Seizures,* 80 Geo.L.J., 962, 1007 (1992). The stop was lawful. The follow-up search was lawful if Trooper Crowe had probable cause to believe the van contained illegal weapons or drugs, unless preceded by an unreasonable period of detention. An important factor in determining if Crowe had probable cause to conduct the follow-up search of the van is his training and experience.

"[O]fficers are entitled to draw reasonable inferences from these facts in light of their knowledge of the area and their prior experience with aliens and smugglers." *United States v. Ortiz,* 422 U.S. 891, 898, 95 S.Ct. 2585, 2589, 45 L.Ed.2d 623, 629 (1975).

Crowe had knowledge of the following circumstances. Warfield and defendant were traveling on I–44, "a notorious route used by drug traffickers". *State v. Burkhardt,* 795 S.W.2d 399, 405 (Mo. banc 1990). They were driving 79 m.p.h. in a 65–m.p.h. zone at 1:30 a.m. When ordered to stop, they did so only with hesitation by driving at a slow speed on the shoulder for 100 yards. They were driving a van only a few months old with 28,000 miles on the odometer. Warfield was extremely nervous, his hands were shaking uncontrollably and he had a stutter in his voice.

From these circumstances Crowe, a trained officer, could reasonably infer defendant and Warfield were couriers engaged in illegal drug traffic and that such

couriers frequently carry illegal weapons to protect their cargo and its proceeds. From the hesitancy of the driver in stopping, Crowe could also reasonably infer that because of contraband on board the occupants considered attempted flight or armed resistance. Cf. *U.S. v. Blanco*, 844 F.2d 344 (6th Cir.1988); *U.S. v. Walraven*, 892 F.2d 972 (10th Cir.1989).

That each of the foregoing circumstances was not evidence of criminal activity is not decisive.

"Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion. ... We noted in [*Illinois v.*] *Gates*, 462 U.S., [213] at 243–244, n. 13, 103 S.Ct. 2317 [, at 2335] n. 13, 76 L.Ed.2d 527 (1983), that 'innocent behavior will frequently provide the basis for a showing of probable cause,' and that '[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts.' That principle applies equally well to the reasonable suspicion inquiry." *United States v. Sokolow*, 490 U.S. 1, 9–10, 109 S.Ct. 1581, 1586–1587, 104 L.Ed.2d 1, 11–12 (1989).

When the foregoing factors are considered together, in the light of his training and experience, I believe the officer had probable cause to believe the van carried illegal weapons. The officers conducted their investigation with dispatch. The total period of detention was not unreasonable. Cf. *U.S. v. Walraven*, supra. The trial court's decision that the circumstances justified the follow-up search was not clearly erroneous.

I have considered defendant's contention the evidence was insufficient because there was no evidence the substance was adequately identified as marijuana. That contention has no merit. I would affirm the conviction.