UNITED STATES of America

v.

Nico Lashun HALE.

Criminal Action No. 1:96–CR–200–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 19, 1996.

Katherine B. Monahan, Asst. U.S. Attorney, Atlanta, GA, for Government.

Jimmy Hardy, Federal Defender Program, Atlanta, Georgia, for Defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This criminal case is before the court on Defendant's objections to a Report and Recommendation ("Report") of United States Magistrate Judge John E. Dougherty filed May 7, 1996. The Report recommends that Defendant's motion to suppress evidence be denied. Both sides have filed briefs.

Defendant moves to suppress evidence discovered as a result of a warrantless "pat-down" search of his person following a traffic stop of a vehicle in which he was a passenger. The search disclosed a concealed weapon on Defendant's person and led to the instant indictment under 18 U.S.C. § 922(g) (felon in possession of a firearms).[1]

On April 16, 1996, Magistrate Judge Dougherty held an evidentiary hearing on the motion to suppress. The only evidence presented was the testimony of Gwinnett County Police Officer J. Parish. The government filed a brief opposing the motion to suppress.

■ When a party files timely and specific objections to findings of fact made by a magistrate judge, the district court is obligated to conduct a *de novo* review of the record regarding that issue. *LoConte v. Dugger*, 847

F.2d 745, 750 (11th Cir.1988), *cert. denied*, 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988). Accordingly, the court independently reviews the facts of this case.

At approximately 2:20 a.m. on October 31, 1995, Officer Parish was patrolling alone near the intersection of Beaver Ruin Road and Singletree Road in Gwinnett County, Georgia. There were few cars on the road. It had been a quiet night; Officer Parish had received no reports of burglary in the area. He saw a vehicle operating with no tag light, in violation of Georgia traffic law, and proceeded to stop the vehicle.

Officer Parish approached and asked the driver, Kendall Caldwell, for proof of insurance and his driver's license. Caldwell provided the license, but explained that he had no proof of insurance because the "vehicle belonged to his aunt that lived just down the street." (Tr. at 7). Officer Parish returned to his police car and learned by accessing the Gwinnett police computer system that Caldwell was "on probation or parole." (Tr. at 8). Parish filled out traffic citations for the absence of a tag light and the driver's failure to provide proof of insurance. Parish also radioed "Code 4" to the Gwinnett Police Department which means "Everything is all right, it's just routine." *Id.* at 23. Officer Parish returned to the stopped vehicle and asked Caldwell to step out of the car. He then asked him "what he was on probation or parole for." *Id.* at 8. Caldwell responded "a theft and a drug charge." *Id.* Officer Parish handed him the two citations.

Officer Parish then asked Caldwell for consent to search the vehicle. Caldwell consented.[2] Parish patted down Caldwell and found

---

1. The indictment alleges that the Defendant had been convicted of theft by receiving stolen property on November 9, 1994.

2. Defendant argues that consent was not given because Officer Parish testified that he asked, "[W]ould you mind if I—then you wouldn't mind me having consent to search your vehicle?," to which the driver responded, "Yes." However, close reading of the transcript reveals that Officer Parish three times at the suppression hearing discussed the consent given him by the driver, and each time Parish indicated confidence that affirmative consent was given. (Tr. at 8, 25, 32).

In formulating the argument that consent was not given, Defendant has taken out of context certain testimony from the April 16, 1996 hearing, and has improperly treated these words as a direct quote of Parish's utterance on October 31, 1995. At the suppression hearing, after Parish made the statement quoted above, defense attorney Jimmy Hardy immediately rephrased Parish's words: "So he wouldn't mind. You said would you mind consent to search your vehicle." (Tr. at 32). Then Attorney Hardy determined to "move on" in his questioning instead of clarifying what he himself had reiterated to the witness in two phrases which indicated that consent was given. *Id.*

nothing. He then asked Caldwell whether there were "any drugs, bombs, grenades, weapons, or any stolen merchandise in the car." (Tr. at 26). Caldwell replied "No." *Id.* Officer Parish then instructed Caldwell to wait in front of the police vehicle. Officer Parish testified he felt no particular threat from the passenger of the vehicle during his questioning and pat-down of the driver. He saw nothing unusual or threatening. (Tr. at 25). He did not call for back-up. (Tr. at 27).

Officer Parish then walked around the car and told the passenger, Nico Hale, to step out. Parish then frisked him. There was no verbal exchange between Hale and Parish after Hale got out of the car. The pat-down revealed a Raven .25 caliber automatic pistol in Hale's right front pocket. Parish immediately called for a back-up unit which arrived in ten minutes.

At the hearing Officer Parish testified that he frisked Hale "for my safety." TR. 33.

### LEGAL DISCUSSION

██ Officer Parish had a valid reason for stopping the vehicle on October 31, 1995. The vehicle was operated in violation of Georgia traffic law, without a tag light. The fact that the traffic violation was relatively minor is irrelevant to the officer's right to stop the car. *See Whren v. United States,* — U.S. —, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

██ A difficult issue is presented, however, as to whether the frisk was permissible. The question is whether Officer Parish had reason to believe that the passenger *may* have been armed and dangerous. The landmark case setting forth the principles for determining the legality of a police stop-and frisk is *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In *Terry* a police officer became suspicious of several men who kept walking back and forth in front of a store window. The officer suspected that the three men were "casing a job, a stick-up," *Terry* at 6, 88 S.Ct. at 1872, and therefore may have been armed. The officer followed the men down the street and confronted them. He identified himself and asked their names, to which they responded in mumbles. The police officer spun one of the men (Terry) around and patted down his outer clothing. He found a pistol in Terry's breast pocket. Subsequent frisk of Terry's companion revealed a second pistol. Search of the third man revealed no weapon. Terry was charged with carrying a concealed weapon and moved to suppress the pistol as evidence. *Terry* at 4–8, 88 S.Ct. at 1871–73.

The United States Supreme Court upheld the officer's actions. Specifically, the Court held:

> Where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous; ... he is entitled for the protection of himself ... to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Terry* at 30, 88 S.Ct. at 1884–85.

██ Under *Terry,* the circumstances of time, of surroundings, and of an officer's subjective feelings based on law enforcement experience are highly relevant. A police officer may not, however, conduct a pat-down search based on a "hunch." *Terry* at 27, 88 S.Ct. at 1883. The Court stressed that "In justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry* at 21, 88 S.Ct. at 1880. Circuit courts have held repeatedly that more-than-minimal intrusion such as prolonged detention or frisk may not be justified by an initial traffic stop, absent additional and reasonable suspicion.[3] *See,*

---

**3.** It was reasonable for Parish to ask the occupants to step out of the car to facilitate the search. *See Pennsylvania v. Mimms,* 434 U.S. 106, 110–11, 98 S.Ct. 330, 333–34, 54 L.Ed.2d 331 (1977) (holding that concern for a police officer's safety outweighed the slight intrusion on a motorist's liberty when the police officer, who had no reason to believe the motorist was armed or dangerous, directed the motorist stopped for a minor traffic infraction to step out of his vehicle); *Ruvalcaba v. City of Los Angeles,* 64 F.3d 1323 (9th Cir.1995) (holding that police officer who

**430**

*e.g., United States v. Baker,* 78 F.3d 135 (4th Cir.1996) (observing a bulge which could be made by a weapon in a suspect's clothing warranted belief that suspect could be armed and dangerous, even though suspect was stopped for minor traffic violation); *United States v. Mitchell,* 951 F.2d 1291 (D.C.Cir. 1991) (police officer held reasonable belief that passenger might be armed, after officer stopped car fleeing from police and observed passenger moving his hands under his coat as if hiding a gun); *United States v. Holifield,* 956 F.2d 665 (7th Cir.1992) (officer's pat-down search of driver *and* passengers was reasonable during traffic stop when driver had approached police car in "boisterous" and "aggressive" manner, late at night, subsequent to driver being observed leaving a tavern and driving recklessly).

Two things are noteworthy about the facts of this case. One is that the stop of the vehicle and Officer Parish's observations did not justify either a search of the vehicle or a patdown of the occupants. The search of the vehicle was only possible because of the driver's consent. Secondly, the record is nearly devoid of any evidence that Officer Parish had an objective basis for thinking that Defendant Hale, the passenger, might have been armed. Parish did testify that the patdown was done "for my safety," TR. 33, but when this evidence is considered along with Parish's testimony that the passenger did not appear to pose a threat, the most natural conclusion is that the patdown was a general precautionary measure, not based on the conduct or attributes of the Defendant or the driver. The driver's status as a parolee/probationer, the time of night and the isolated location, did not, in the court's opinion, give a right to search the passenger, especially when the patdown of the driver proved negative. It is also clear that a backup unit was nearby which could have been called before the search of the vehicle took place, thereby obviating the need for a frisk of Hale before the search could proceed. Having reviewed all of the facts and circumstances set forth in

the record, the court believes that Parish's frisk of Hale was not objectively reasonable. Because the search of Hale's person was unreasonable, Defendant's motion to suppress will be granted.

The court is acutely aware of the irony of its finding: Indeed, it would have been dangerous for Officer Parish to turn his back on Hale to conduct the search of the car; Defendant Hale did have a gun. However, the purpose of the Fourth Amendment is to protect citizens from unreasonable searches. Rulings on search-and-seizure issues set the standard for future police conduct.[4] Few citizens would find it acceptable to be frisked at a traffic stop for a minor traffic violation because the driver consented to a search of the car.

Accordingly, the motion to suppress [# 10–1] is GRANTED. This court DECLINES to adopt the Report and Recommendation of Magistrate Judge Dougherty.

---

has lawfully stopped a vehicle for a traffic violation may order passengers as well as the driver to step outside of the vehicle, even in absence of probable cause or reasonable suspicion of criminal activity).

**4.** Parish admitted that the search of Hale was not pursuant to any written procedure of the police department. TR. 32, 33.