STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeff S. MOHR, Defendant-Appellant.

Court of Appeals

*No. 99–2226–CR. Submitted on briefs December 17, 1999.—Decided April 26, 2000.*

2000 WI App 111

(Also reported in 613 N.W.2d 186.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Eileen A. Hirsch*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Kathleen M. Ptacek*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Brown, P.J., Anderson and Snyder, JJ.

¶ 1. ANDERSON, J.   Jeff S. Mohr appeals from a judgment of conviction for marijuana possession contrary to WIS. STAT. § 961.41(3g)(e) (1997–98),[1] by

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

arguing that the trial court's refusal to suppress evidence the police obtained when they stopped and frisked him was in error. Mohr maintains that the officer did not have a reasonable suspicion that he was engaged in criminal activity or that he was armed and dangerous. We conclude that the totality of the circumstances do not supply reasonable suspicion that Mohr was a danger to the officer to support the frisk. Therefore, we reverse.

## BACKGROUND

¶ 2.   At the motion hearing, the following testimony was presented. At 1:00 a.m. on January 31, 1999, City of West Bend Police Officer Tim McCarthy was conducting routine patrol, when he observed a blue vehicle cross the roadway's center line. As he continued to observe the vehicle, it drove straight through a left turn lane at a speed approximately ten miles over the speed limit. McCarthy activated the squad car's emergency lights and pulled over the vehicle to conduct a traffic stop.

¶ 3.   As McCarthy approached the vehicle, he noted that it contained four passengers. While asking the driver for identification, he detected a strong odor of intoxicants coming from within the vehicle. In response to McCarthy's questioning about whether he had been drinking, the driver responded that he had not, but that the group was returning from a party in Milwaukee. McCarthy requested that the driver perform field sobriety tests. The driver exited the vehicle, while the other passengers remained inside.

¶ 4.   The field sobriety tests and a preliminary breath test revealed that the driver was not intoxicated. McCarthy decided not to give the driver a traffic citation, but an oral warning. He next asked the driver

for permission to search the vehicle, and the driver consented.

¶ 5. McCarthy walked back to the vehicle, requested identification from the passenger directly behind the driver's seat and asked the passenger to exit the vehicle for officer safety reasons. He observed that the passenger had been drinking alcohol. Because this passenger was also a minor, McCarthy arrested him for underage consumption of alcohol, *see* WIS. STAT. § 125.07(4)(b), and placed him in the squad car being monitored by another officer. The driver was also waiting in the squad car. By this time, three officers and squad cars were at the scene.

¶ 6. McCarthy returned to the vehicle, this time approaching the front seat passenger. He asked the passenger, Mohr, his name and requested that he exit the vehicle "for officer safety." Mohr exited the vehicle. McCarthy noticed that Mohr stumbled getting out of the car and smelled strongly of intoxicants. He wanted to place Mohr in his squad car with the other passengers, but it was filled, so he told Mohr to sit in the next available squad car. Mohr refused. He stated that he wanted to go home. McCarthy responded that he had not confirmed Mohr's identity yet. Mohr replied that his house was only two blocks away, and he was going home. McCarthy once again told him no and that he should wait for his identification to be confirmed. Because it was cold outside, he stated that Mohr should wait in the squad car. Mohr "put his hands inside of his pockets and became really resistive." For officer safety reasons, McCarthy requested that Mohr remove his hands from his pockets, but Mohr refused to do so.

¶ 7. McCarthy again requested that Mohr take his hands out of his pockets because McCarthy did not know what was in the pockets, and Mohr was acting

nervous and resistive. Once again, Mohr refused to remove his hands from his pockets. McCarthy and another officer took Mohr's hands from his pockets, put them behind his back and handcuffed them for officer safety.

¶ 8. About four or five minutes after he first asked Mohr to exit the vehicle, McCarthy began to frisk him. Starting the frisk on Mohr's right side, McCarthy felt a lighter in the pants pocket. He removed the lighter because of the potential damage it could cause to the squad car and Mohr. As McCarthy began to move to frisk Mohr's left side, Mohr tried to guard his left-side jacket pocket. During the frisk, McCarthy "felt what appeared to be a large plastic baggie" with some "soft material in the inside of it" in the jacket pocket. Thinking that it could be contraband, he removed it. The baggie contained marijuana, and McCarthy placed Mohr under arrest for possessing it.

¶ 9. After his arrest, Mohr moved the court to suppress the evidence because he challenged the legality of his detention and frisk. At the motion hearing Mohr asserted, among other things, that the officer lacked a reasonable suspicion to perform the frisk for weapons. The court determined that there was reasonable suspicion to stop the vehicle, the driver consented to the vehicle search and it was appropriate and reasonable to ask the vehicle's passenger to exit the vehicle to conduct the search. In denying the motion, the court reasoned that the frisk was reasonable because Mohr refused to take his hands out of his pockets.

¶ 10. After his suppression motion was denied, Mohr entered into a plea agreement with the State to rescind the repeat offender portion of his charge in exchange for his guilty plea. After Mohr pled guilty to

the marijuana possession charge, the court sentenced him to serve forty-five days in jail with Huber privileges, suspended his motor vehicle operating privileges for six months and required him to pay the court costs. Mohr appeals, challenging the court's rejection of his suppression motion.

## DISCUSSION

¶ 11. When we review a motion to suppress evidence, we will uphold the trial court's findings of fact unless they are clearly erroneous. *See State v. Eckert*, 203 Wis. 2d 497, 518, 553 N.W.2d 539 (Ct. App. 1996). However, whether a stop and frisk meet constitutional standards are questions of law that we decide without deference to the trial court's decision. *See State v. Betow*, 226 Wis. 2d 90, 93, 593 N.W.2d 499 (Ct. App. 1999).

¶ 12. In order to justify a stop and frisk, the officer "must be able to point to specific and articulable facts which, taken with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). An officer must have a reasonable fear for his or her personal safety before effectuating a frisk. *See State v. Williamson*, 113 Wis. 2d 389, 403–04, 335 N.W.2d 814 (1983).

¶ 13. Once the officer has articulated the facts that caused him or her to act, those facts are assessed against an objective standard: "[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a [person] of reasonable caution in the belief' that the action taken was appropriate?" *Terry*, 392 U.S. at 21–22. There is no set standard for what constitutes a reasonable police reaction in all situa-

tions. Rather, the reasonableness of the reaction depends upon the circumstances facing the officer. *See Bies v. State*, 76 Wis. 2d 457, 468 & n.7, 251 N.W.2d 461 (1977). The court must examine the totality of the circumstances to determine whether the stop and frisk were justified. *See Penister v. State*, 74 Wis. 2d 94, 100, 246 N.W.2d 115 (1976).

¶ 14.    Mohr does not question the legality of the initial traffic stop. He contends that the stop and frisk of his person were unlawful because they were not based on a reasonable suspicion of criminal activity and dangerousness. The stop and frisk were justified, the State responds, for officer safety reasons. Indeed it is well established that an officer's concern for his or her safety during a traffic stop is a legitimate and weighty consideration. Clearly, the "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car." *Maryland v. Wilson*, 519 U.S. 408, 414 (1997). We begin our discussion by considering whether the frisk was permissible.

¶ 15.    Having reviewed all of the facts and circumstances set forth in the record, we conclude that the frisk was unreasonable because the officer could not have objectively thought that Mohr was dangerous. The officer testified that the frisk was done for his safety and because Mohr refused to take his hands out of his pockets, but when this evidence is considered along with the fact that the frisk occurred approximately twenty-five minutes after the initial traffic stop, the most natural conclusion is that the frisk was a general precautionary measure, not based on the conduct or attributes of Mohr.

¶ 16.    When the officer first stopped the vehicle, he ordered the driver out of the car and permitted the

passengers to remain inside. Ten minutes later, after the officer had finished giving the driver field sobriety tests and gotten his permission to search the vehicle, the officer reapproached the vehicle, ordering the driver's-side rear passenger out and permitting the other passengers to remain. Another ten minutes elapsed while the officer dealt with that passenger. The officer then returned to the vehicle and requested that Mohr get out of it. The frisk was begun after another five minutes passed. Apparently, the officer was not concerned for his safety when he initially made the traffic stop because he did not order the passengers out of the vehicle. Nor was he concerned about his safety when he left the vehicle and its passengers unattended while spending twenty minutes with the driver and the minor. Although Mohr appeared nervous, was resistive and refused to remove his hands from his pockets, these circumstances did not give the officer a reasonable suspicion that Mohr was dangerous, especially when the officer had spent the previous twenty minutes at the scene without any suspicious incidents. Additionally, it is clear that backup units were on the scene, which obviated the officer's need to frisk Mohr before the vehicle search could proceed. We cannot agree that a reasonably prudent person in the officer's position would believe that his or her safety was in danger.[2]

¶ 17.  We also consider noteworthy the fact that the stop and frisk of Mohr occurred during a vehicle

---

[2] The State makes numerous arguments contending that the stop was lawful. We do not address these arguments because we resolve this appeal on the frisk issue. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (if resolution of one issue is dispositive, this court need address other issues raised).

search consented to by the driver after he had been given an oral warning for minor traffic violations. Although the consensual search is not at issue here, we observe, as have other appellate courts, that an increasing number of appeals present situations in which police officers routinely ask permission to do drug and weapon searches of motor vehicles following stops for minor traffic infractions. *See, e.g., Whitehead v. State*, 698 A.2d 1115, 1116–17 (Md. Ct. Spec. App. 1997); *United States v. Lattimore*, 87 F.3d 647, 649 (4th Cir. 1996) (testifying at a suppression hearing, police officer admits that he searches ninety-seven percent of the vehicles he stops). It is reasonable for an officer to ask a vehicle's passengers to step out of the car to facilitate the search. *See Maryland*, 519 U.S. at 415. However, a frisk is a more serious intrusion of a person's liberty than being asked to step out of a vehicle during a traffic stop. "Few citizens would find it acceptable to be frisked at a traffic stop for a minor traffic violation because the driver consented to a search of the car." *United States v. Hale*, 934 F. Supp. 427, 430 (N.D. Ga. 1996).

CONCLUSION

¶ 18. We conclude that the frisk of Mohr was unlawful because the officer lacked reasonable, articulable facts to prove that he believed him to be dangerous. It follows that the drug evidence seized during the unlawful frisk must be suppressed. *See State v. Phillips*, 218 Wis. 2d 180, 204–05, 577 N.W.2d 794 (1998). Mohr's suppression motion should have been granted. That being the case, there is no evidence to support Mohr's conviction for marijuana possession, and, accordingly, we reverse his conviction.

*By the Court.*—Judgment reversed.