COURT OF APPEALS
DECISION
DATED AND FILED

November 11, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1457-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2022CF44

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

V.

JENNIFER C. SAGEN,

   DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Rusk County: BEVERLY WICKSTROM, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. The State of Wisconsin appeals the circuit court's order suppressing evidence obtained when the police conducted a pat-down search

of Jennifer Sagen for weapons while investigating her for operating a motor vehicle while intoxicated. The sole issue is whether the search violated the Fourth Amendment. We conclude that it did. Accordingly, we affirm the circuit court's order suppressing the evidence.

## BACKGROUND

¶2 The relevant facts are undisputed. Law enforcement officers were dispatched at around 12:30 a.m. to a Kwik Trip after an employee reported that there was a person, later determined to be Sagen, passed out in a running vehicle. Two police officers from the Ladysmith Police Department were the first to arrive, and they attempted to wake Sagen by tapping on her window. Sergeant Matthew Wojcik arrived shortly thereafter, just as Sagen awoke. Wojcik testified that he believed that Sagen might be under the influence of an intoxicant because she appeared very confused, lacked fine-motor skills, and, at one point, had her driver's license in her hand but did not realize it. Wojcik testified that, in his experience, people who are impaired are unpredictable, volatile, and sometimes dangerous.

¶3 Wojcik testified that he knew Sagen from prior police contacts and that he knew her to have a long history of narcotics use. When he asked her to get out of her car for field sobriety testing and told her that he was going to conduct a pat-down search of her person for weapons, she was cooperative. Wojcik testified that he did not know Sagen to have a violent history, that he did not see a weapon in her car or on her person before the search, that she was cooperative, and that she made no threats. Wojcik explained that he performs pat-down searches for weapons nearly every time he does a field sobriety test.

¶4 Wojcik testified that Sagen was wearing a loose-fitting sweatshirt and a fairly bulky jacket, so she had the ability to conceal a weapon, although he did not

2

have specific knowledge that she was armed. He further testified that even though they were in a lighted parking lot, it was the middle of the night, so visibility was not like it would be in daylight hours. According to Wojcik, when he asked Sagen if she had anything in her pockets that could stick or stab him prior to the search, she put her hands in her pockets and started rifling around. He directed her to remove her hands but noticed that one of her hands was in a fist, which she raised over her head and slid into her sleeve. Another officer standing next to Wojcik told Sagen to hold out that arm, patted it down, and found drugs.

¶5    Sagen was charged with possession of methamphetamine. She moved to suppress the evidence. After an evidentiary hearing, the circuit court granted her motion. This appeal follows.

## DISCUSSION

¶6    Under the Fourth Amendment, an officer may conduct a limited pat-down search for weapons, known as a *Terry* frisk, during a lawful stop when the officer has reasonable suspicion, based on specific and articulable facts, and rational inferences drawn from those facts, that the person may be armed and presently dangerous. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *State v. Johnson*, 2007 WI 32, ¶21, 299 Wis. 2d 675, 729 N.W.2d 182. The inquiry is objective: it asks whether a reasonably prudent officer in the circumstances would believe the person may be armed and dangerous. *Terry*, 392 U.S. at 22-23.

¶7    Reasonable suspicion for an officer to conduct a protective search is assessed under the totality of the circumstances. *Johnson*, 299 Wis. 2d 675, ¶22. Contextual factors such as the time, location, and clothing may contribute to reasonable suspicion. *See State v. Kyles*, 2004 WI 15, ¶17, 269 Wis. 2d 1, 675 N.W.2d 449. The reasonable suspicion standard requires individualized suspicion

in each case; generalized practices or categorical rules do not suffice, absent case-specific facts indicating the person may be armed. *Id.*, ¶50 (declining "to adopt a per se rule that in all cases, regardless of other circumstances, a person's placing his or her hands in his or her pockets after an officer directed that the hands be removed is sufficient to provide a reasonable suspicion to effectuate a protective weapons frisk"); *State v. Mohr*, 2000 WI App 111, ¶15, 235 Wis. 2d 220, 613 N.W.2d 186 (ruling that a pat-down search for weapons was unlawful because it "was a general precautionary measure, not based on the conduct or attributes of [the defendant]").

¶8      Review of a suppression ruling presents a mixed question of constitutional fact: we uphold the circuit court's historical findings unless they are clearly erroneous, and we independently apply constitutional principles to those facts. *State v. Tullberg*, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120. Whether the facts establish reasonable suspicion for a *Terry* frisk is reviewed de novo. *Mohr*, 235 Wis. 2d 220, ¶11.

¶9      Applying *Terry* and its progeny to the facts found by the circuit court, we conclude that the State did not meet its burden to show reasonable suspicion that Sagen may have been armed and presently dangerous at the time the police conducted a pat-down search of her person.

¶10     While impairment may be relevant to officer safety, here Sagen's condition—sleepy, lethargic, and confused, but cooperative—does not reasonably suggest she was dangerous. Moreover, Wojcik knew Sagen, knew that she had a long history of narcotics use, and he testified that he was unaware of any prior history of her acting in a violent manner, which mitigates against a finding that she was armed and dangerous when she agreed to the field sobriety test. The encounter

4

occurred in a public, lighted parking lot with multiple officers present. Officer-safety concerns are mitigated by the presence of other officers, and such circumstances reduce the need to frisk. *See Mohr*, 235 Wis. 2d 220, ¶16 (backup units obviated need to frisk Mohr before the vehicle search could proceed).

¶11 Importantly, Wojcik's testimony that he routinely frisks before he performs field sobriety tests cuts against a finding of reasonable suspicion because *Terry* requires an individualized, context-dependent, case-specific assessment, not a categorical practice. *See Mohr*, 235 Wis. 2d 220, ¶17. Wojcik's "routine" is contrary to this requirement.

¶12 The State points to Sagen's failure to promptly remove her hands from her pockets and some fidgeting after Wojcik announced an impending frisk. Hand concealment can be a relevant factor, but it is not dispositive and must be considered in context. *Id.*, ¶¶15-17. Here, Sagen's hand movements appeared to be a tentative search for sharp objects in response to Wojcik's question about her having sharp objects in her pockets and/or an attempt to hide contraband, rather than indicative of an imminent threat or attempt to draw a weapon.

¶13 Considering the totality of the circumstances, and giving deference to the circuit court's factual findings, we conclude the combination of the late hour, Sagen's impairment marked by lethargy and confusion rather than aggression, her cooperative demeanor, the lighted public setting with multiple officers, and Sagen's ambiguous post-advisement hand movements does not support a reasonable suspicion that Sagen may have been armed and dangerous. Therefore, we affirm the circuit court's ruling that the search violated the Fourth Amendment.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2023-24).