**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Dallas L. HOLIFIELD, Defendant–Appellant.**

**No. 90–3019.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1991.

Decided Feb. 10, 1992.

Stephen J. Liccione, argued, Matthew L. Jacobs, Asst. U.S. Attys., Milwaukee, Wis., for plaintiff-appellee.

Martin E. Kohler, Mia Sefarbi, argued, Levine & Epstein, Milwaukee, Wis., for defendant-appellant.

Before CUMMINGS and EASTERBROOK, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Dallas Holifield was indicted on one count of making false statements in connection with the purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6), and on one count of receiving and possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The seizure of a pistol from Holifield's car during a traffic stop formed the basis for the allegations in the indictment. Holifield filed a motion to suppress the evidence as seized pursuant to an unlawful search. He also moved to suppress statements made to police officers after the seizure as the fruits of an unlawful search. Magistrate Judge Goodstein held a hearing on the motion to suppress and recommended that the evidence be suppressed. Judge Stadtmueller adopted the Magistrate's findings of fact but declined the recommendation and denied the motion to suppress. Before Judge Gordon, Holifield entered a conditional plea of guilty reserving his right to appeal from the denial of his motion to suppress. He was sentenced to 8 months imprisonment on each count running concurrently and a $2000 fine and now appeals.

## BACKGROUND

At 9 P.M. on January 22, 1990, Officers Wiesmueller and Andrews were on a stake out in Milwaukee when they observed Holifield exit a nearby tavern, get into a car, and pull abruptly away from the curb. The car proceeded at a high rate of speed, and the officers followed in an unmarked squad car. The car was being driven recklessly around corners and rolled through a stop sign. The officers pulled the car over to give Holifield a citation for speeding.

Before the officers had exited their squad car, Holifield exited his car and approached the squad car in a boisterous, aggressive manner. The officers exited the squad car with their weapons drawn. Holifield challenged the officers as to the reason for the stop. The officers subjected Holifield to a pat-down for weapons and asked him for his driver's license. The pat-down discovered no weapons. Holifield continued to act in a boisterous, aggressive manner but did not verbally threaten the officers' physical safety. Holifield cooperated with the protective search and willingly produced his driver's license.[1]

The officers then noticed that there were two passengers in the car and ordered them to exit the vehicle. The car had tinted windows making it difficult to see people or activities inside of the car. The passengers willingly exited the car and cooperated as the officers patted each of them down for weapons. No weapons were found on either passenger. Because it was normal procedure to allow persons to wait in their car while writing a citation,

---

1. In his argument to this court, Holifield did not attack the magistrate's factual findings as clearly erroneous. Nevertheless, we have studied the transcript of the suppression hearing and encountered testimony by the two officers such as the following:

    Q. When you say aggressive manner, do you recall anything specifically Mr. Holifield said to you?
    A. Anything I would try and tell him, he would challenge me on it ... my partner had his service revolver out, and Mr. Holifield made statements we would love nothing more than to shoot a nigger, and were racists and things of that nature. (Hearing Trans., May 2, 1990, at 15)

    . . . . .

    Q. When you say his demeanor, what do you mean?
    A. His agitated way that he came on to us. He was very forceful, insulting, threatening to some degree in a situation that certainly didn't call for that. It's not the normal situation as I stated before. I had many, many traffic stops, and although some people get nervous when stopped by authorities, they certainly do not come out and charge on you and make statements, threatening statements, to you. (Hearing Trans., May 2, 1990, at 22–23)

    . . . . .

    Q. How soon after you stopped the Holifield vehicle was your gun drawn?
    A. As soon as I saw how rapidly he was approaching us, his demeanor being excited and vocal, I didn't know what his intentions were. It's not ordinary during the course of our work for people to approach us in that kind of a manner. (Hearing Trans., May 2, 1990, at 70)

    Based upon this and other testimony, the magistrate found "credible the officers' testimony that the defendant approached their vehicle in an aggressive, boisterous manner." *United States v. Holifield*, Magistrate's Order and Recommendation, Case No. 90–CR–34, May 11, 1990, at 10.

Officer Wiesmueller, apparently expecting the men to reenter the car, examined the interior of the car for weapons. No weapons were found in the open passenger compartment. Officer Wiesmueller removed the car keys from the ignition and unlocked the glove compartment where he found a pistol. Holifield admitted that the pistol belonged to him, and the officers arrested him.

## DISCUSSION

There exists a difference of opinion among the judges of this court as to the appropriate standard of review applicable to Fourth Amendment determinations of probable cause and reasonableness. *United States v. Chaidez*, 919 F.2d 1193, 1196 (7th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 209, 116 L.Ed.2d 167 (1991). In reviewing a judicial officer's finding of probable cause for issuance of a search warrant, this court has limited review to a determination of "whether there was a substantial basis for finding probable cause." *United States v. McKinney*, 919 F.2d 405, 412 (7th Cir.1990). Some judges, however, have expressed their disagreement with that approach. *Id.* at 418–23 (Posner, *J.*, concurring); *United States v. Malin*, 908 F.2d 163, 169–70 (7th Cir.) (Easterbrook, J., concurring, with Posner, *J.*, joining), *cert. denied,* —— U.S. ——, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990). In reviewing Fourth Amendment determinations of probable cause and reasonableness in the nonwarrant context, this court has verbalized conflicting standards of review. On some occasions, this court has stated that "a district court's denial of a motion to suppress evidence will not be disturbed unless the decision was clearly erroneous." *United States v. Sewell*, 942 F.2d 1209, 1211 (7th Cir.1991); *United States v. Bennett*, 908 F.2d 189, 192 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990); *United States v. Edwards*, 898 F.2d 1273, 1276 (7th Cir.1990). On other occasions, this court has explained that legal determinations made in a suppression hearing, such as the question of whether circumstances found by a district court meet the Fourth Amendment standard of reason-

ableness, are subject to *de novo* review. *United States v. Richards*, 937 F.2d 1287, 1290 (7th Cir.1991); *McKinney*, 919 F.2d at 412; *United States v. Sophie*, 900 F.2d 1064, 1072 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 124, 112 L.Ed.2d 92 (1990); *United States v. Ingrao*, 897 F.2d 860, 862 (7th Cir.1990). Because, however, we would reach the same result in this case whether the standard be deferential or *de novo*, we will not attempt to resolve the conflict here.

■■■ An officer may conduct a protective pat-down for weapons if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). In determining the reasonableness of the officer's conduct, "due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.*

■■■ The officers could have had a reasonable belief that Holifield presented a danger to themselves and others. Their belief was not based upon a "hunch" but upon Holifield's boisterous, aggressive approach to the squad car. Officer Wiesmueller testified that it is unusual for a driver to exit his or her vehicle upon being stopped. The officers exited their squad car with their weapons drawn, thus evidently deeming Holifield's approach threatening. Holifield's aggressive actions, the time of night, his reckless driving, and the fact that he had just exited a tavern could lead a reasonably prudent officer to believe that his safety was in danger. Thus, the pat-down of Holifield was reasonable, and the issue in this case is whether subsequent events rendered this belief unreasonable.

■■■ That brings us to the weapons search of the passenger compartment of the car. "[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police

officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)); *United States v. Denney*, 771 F.2d 318, 321 (7th Cir.1985). Both the magistrate and the district judge decided that a weapons search of the open passenger compartment was reasonable to protect the officers' safety under the circumstances. The magistrate felt that because no weapons had been found and no additional basis for fear perceived, the officers' apprehension of danger from a possible weapon in the glove compartment, once the men returned to the car, was unreasonable. Judge Stadtmueller, however, noted that the officers would "find it difficult to break their protective search into such discrete steps" and felt "obliged not to second-guess the steps officers take to protect themselves." We agree that the absence of weapons on the persons of the three men, and the fact that there was no further aggressive behavior did not, as a matter of law, make continuing apprehension of danger unreasonable.

The pat-downs of Holifield and his two passengers had found no weapons, and Holifield and the passengers had fully cooperated with the officers. Holifield, therefore, argues that as the episode continued, there was ever-increasing reason to believe that Holifield and his passengers posed no threat to the officers' safety. This court has upheld the denial of a motion to suppress evidence in a situation where intervening factors were argued to have dissipated or at least reduced the officers' reasonable belief of danger. *United States v. Longmire*, 761 F.2d 411, 419–20 (7th Cir. 1985). In *Longmire*, a radio dispatch informed the officers that two black males, armed with a shotgun, and two black females had fled the scene of an aggravated assault in a late-model light brown Buick bearing a certain license plate number.

Four hours later, the officers stopped a car matching the description given in the dispatch. The defendant argued that the following intervening factors should have dissipated the officers' reasonable belief of danger: there had been a four-hour lapse of time since the last bulletin; there were only two occupants in the car; the occupants were both female and the dispatch indicated that only the males were armed; the dispatch gave no description of the females except their race; and the occupants were not engaged in any suspicious activity at the time of the stop. *Longmire*, 761 F.2d at 419. We concluded that the information provided by the initial dispatch supported the officers' reasonable belief that the occupants were dangerous, despite the intervening factors, and we upheld the reasonableness of the weapons search of the passenger compartment. Similarly here, the failure to find weapons on the men when outside the car did not erase the initial legitimate concerns created by Holifield's erratic driving and aggressive and boisterous behavior, and render unreasonable the officers' concern over the possible presence of weapons when the men returned to the car. The car's tinted windows, which prevented the officers from observing activities inside the car, also added to the officers' reasonable concern for their safety when the men reentered the car.

Holifield argues that, because the glove compartment was locked with the keys left in the ignition and all occupants had exited the car, the officers could have had no reasonable belief that either Holifield or the passengers could gain immediate control of any weapon located inside the locked glove compartment. This argument overlooks the officers' anticipation that Holifield and his passengers would return to their car and wait while the officers wrote a citation. The fact that the officers anticipated allowing the occupants to reenter the vehicle may be considered in determining whether the officers' protective search of the vehicle was reasonable. *Long*, 463 U.S. at 1051–52, 103 S.Ct. at 3481–82. Once the occupants reentered the vehicle, it

would have taken only a few seconds for Holifield or one of the passengers to remove the keys from the ignition and unlock the glove compartment, thus giving them immediate access to the pistol.

In addition, the Supreme Court has rejected the reasoning that because the occupants have exited the vehicle and are under the control of officers, the officers could not reasonably believe that they could gain immediate control of a weapon located inside the vehicle. In such a traffic stop, a suspect "under the brief control of a police officer … might … break away from police control and retrieve a weapon from his automobile." *Long,* 463 U.S. at 1051, 103 S.Ct. at 3482.

Holifield argues that the Supreme Court has recognized a distinction between other areas of the interior of a car and the glove compartment. But having found that the *Long* standard has been met in this case, such that a weapons search of the passenger compartment was reasonable, that weapons search clearly may include closed containers shaped such that they could contain a weapon located within the passenger compartment. *United States v. Paulino,* 935 F.2d 739, 747 (6th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 315, 116 L.Ed.2d 257 (1991). In the *Long* case itself the Court allowed the officers to search a leather pouch during a protective search of the passenger compartment because the pouch could have contained a weapon. *Long,* 463 U.S. at 1050–51, 103 S.Ct. at 3481–82. The glove compartment is generally considered a container in search and seizure contexts, *New York v. Belton,* 453 U.S. 454, 460 n. 4, 101 S.Ct. 2860, 2864 n. 4, 69 L.Ed.2d 768 (1981), and it could contain a weapon, therefore, making it a reasonable part of a protective search of the passenger compartment.

Holifield cites *New York v. Class,* 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986), for the proposition that there is a distinction between other parts of the car and the glove compartment. In *Class,* the "other parts" of the car referred to the exterior portions of the car. The Court stated that the mandated visibility of the Vehicle Identification Number (VIN) made it "more similar to the exterior of the car than to the trunk or glove compartment." *Class,* 475 U.S. at 114, 106 S.Ct. at 965. Additionally, *Class* did not involve even a limited search of the passenger compartment for weapons. The officers were conducting a routine traffic stop and the vehicle's occupant did not appear to be dangerous. The officer merely opened the door of the vehicle to move some papers away from the VIN and noticed a gun protruding out from under the seat. *Id.* at 108, 106 S.Ct. at 963. The distinction between "other parts" of the car and the glove compartment, mentioned *in dicta* in *Class,* does not apply to this case.

■ Holifield is correct in arguing that a protective search for weapons is limited in scope, but the fact that it is a limited search does not mean that it may not encompass the glove compartment. Protective searches are only limited in the sense that the officer conducting the protective search must first have a reasonable suspicion that the suspect is dangerous and the protective search must be directed only to locations which may contain a weapon and to which the suspect may have access. *Long,* 463 U.S. at 1052 n. 16, 103 S.Ct. at 3482 n. 16.

Because we hold that the protective search was reasonable, we do not reach Holifield's argument that his statements were fruits of an illegal search.

The district court's denial of the motion to suppress and the conviction and sentence are AFFIRMED.