943 A.2d 686

**Jason Keith HAMEL**

v.

**STATE of Maryland.**

**No. 2129, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

March 6, 2008.

**2**

David P. Kennedy (Nancy S. Forster, Public Defender, on brief), for appellant.

Cathleen C. Brockmeyer (Douglas F. Gansler, Atty. Gen., on brief), for appellee.

Panel SALMON, ADKINS and SHARER, JJ.

SHARER, J.

In this appeal we are asked to determine whether the search of a locked glove compartment comes within the scope of a lawful search incident to arrest, as enunciated in *New York v. Belton,*[1] and applied in subsequent cases. We shall hold that it does.

Following a non-jury trial in the Circuit Court for Baltimore County, Jason Keith Hamel, appellant, was convicted of a single count of possession of a firearm in connection with a drug trafficking offense. The primary evidence against appellant—the firearm and a quantity of cocaine—was admitted after denial of his motion to suppress, which was based on the contention that the evidence was the fruit of an illegal search of the locked glove compartment in appellant's car.

In his timely appeal, appellant raises a single issue for our review, which, as rephrased is:[2]

Whether the circuit court erred in ruling that a search of the locked glove compartment did not exceed the permissible search of a vehicle incident to a lawful arrest.

Because we find no legal error, we affirm the judgment of the circuit court.

──────────

**1.** 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

**2.** In his brief, appellant asks:
Do police violate the Fourth Amendment and Article 26 of the Maryland Declaration of Rights and exceed the permissible scope of a search of a vehicle incident to an arrest for drunk driving when, after securing the arrested driver and the passengers, police remove the keys from the ignition and use them to open a locked glove box?

## FACTUAL and PROCEDURAL BACKGROUND

On March 11, 2005, appellant was driving a white Chevrolet Camaro on Eastern Boulevard in Baltimore County. Officer Derrick Bowser, on routine patrol, observed the vehicle to be "weaving from one lane to the other lane, and at times traveling in the center of both lanes, across the dotted lines." Bowser stopped the vehicle for the observed traffic violations and began his investigation and processing of appellant. After failing a field sobriety test, appellant was placed under arrest for driving while under the influence of alcohol, and related offenses.[3] Police then searched appellant, incident to the arrest, and discovered an empty black nylon handgun holster in his waistband. Appellant was then handcuffed and placed inside a police vehicle.

Three passengers, who remained in appellant's car, were removed from the vehicle, patted down, and placed on their knees.[4] The interior of the car was also searched. Finding nothing from that search, the police removed appellant's keys from the vehicle's ignition and used them to unlock and open the glove compartment. A search of the glove compartment yielded cocaine,[5] $2,100 in U.S. currency, and a Smith & Wesson .357 Magnum handgun.[6]

Appellant moved to suppress the items seized from the locked glove compartment, arguing that the warrantless search of the compartment was illegal and beyond the scope of a permissible search incident to his arrest. The suppression court conducted a hearing on the motion on September 14,

---

**3.** Appellant concedes the legitimacy of the traffic stop and the lawfulness of his arrest.

**4.** At least one of the passengers was found to be in possession of a Schedule 1 controlled substance.

**5.** The cocaine was packaged in 19 individual baggies. Analysis determined the total weight to be five grams.

**6.** Investigation revealed that the .357 Magnum had been stolen in 2003 from a residence in White Marsh, Baltimore County. Appellant asserted that he had purchased the weapon.

2005, and thereafter received memoranda from counsel to address the issue of whether the search of the locked glove compartment exceeded permissible limits. The court heard further argument on November 10, 2005, and in its oral opinion denying appellant's motion, the court stated, *inter alia:*

> This case is presented to me, and it seems at first blush that the search incident to the arrest principal [sic] and exception shouldn't apply in this case for all the reasons that [counsel] has presented to the court. So I went back and read *New York v. Belton,* and [counsel's] analysis is right on the money.

> Unfortunately, it is the analys[i]s of the [dissent] in that case. The dissent says on page 466 of the case, in quotes. "In its attempt to formulate a single familiar standard to guide police officers who have only limited time and expertise to reflect on and balance the social and individual interest involved in a specific circumstance they confront, the Court today disregards these principals [sic] and instead adopts a fiction that the interior of a car is always within the immediate control of the arrestee who has recently been in the car." The Court thus holds "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile, and they also may examine the contents of any containers found within the passenger compartment."

> The dissent goes on to say "in so holding, the Court ignored both precedent and principle, and failed to achieve its objective of providing police officers with a more workable standard for determining a permissible scope of the search incident to the arrest."

> That's exactly what you're arguing here, Mr. Santini, and unfortunately, it is the dissent in the case in which the majority says that the police officer can search anything within the passenger compartment. So, I am constrained to find that given that Belton is the law of the land, that the

police officer did not violate Mr. Hamel's Fourth Amendment rights in going into the locked glove box.

My heart is with the dissent in Belton and with the facts in your clients [sic] case there's obviously no difference being given to the principles that were enunciated in *Chimel.*

As you pointed out, rightfully so, the police officers weren't in any danger. They didn't know of any contraband that could have been destroyed, but the holding in *Belton* appears to me to be clear that the police do have the right to search any container, and I believe that locked or not is one of the facts that a container is locked doesn't in any way reduce the authority of the police to make the search.

So again, I appreciate all of your efforts on the subject, and I have to say you're [sic] most persuasive argument was under the Maryland Constitution than the Federal Constitution has or the Supreme Court has interpreted the Fourth Amendment broadly that this Court should not give it such a broad interpretation. On the other hand, I am aware of the cases that say we should judge cases under the Maryland Declaration of Rights *[in] pari materia* with the Fourth Amendment so I must respectfully deny the motion on that ground as well.

Following the denial of the motion to suppress, appellant entered a plea of not guilty on an agreed statement of facts to possession of a firearm in connection with a drug trafficking offense. The evidence adduced at the suppression hearing, as supplemented, was adopted as the evidence before the trial court. The court found appellant guilty of the single firearm count and imposed a sentence of ten years, with all suspended but the mandatory minimum five years, followed by five years probation. This appeal followed.

### STANDARD of REVIEW

We recently discussed, in *Christian v. State* 172 Md.App. 212, 216, 914 A.2d 151 (2007), the appropriate standard for reviewing the denial of a motion to suppress:

In reviewing the denial of a motion to suppress evidence, the record at the suppression hearing is our exclusive source of facts. "The one invoking Fourth Amendment protection bears the burden of demonstrating his or her legitimate expectation of privacy in the place searched or items seized." We extend great deference to the suppression court's fact-finding, particularly that court's ability to determine the credibility of the witnesses and to weigh and determine first-level facts. When conflicting evidence is presented, we accept the facts as found by the suppression court, unless clearly erroneous, and we review the evidence in the light most favorable to the prevailing party, in this case, the State. After giving due regard to the suppression court's findings of fact, we then make our own independent appraisal by reviewing the law and applying it to the facts of the case.

(Citations omitted).

## DISCUSSION

■ As we have noted, appellant does not challenge the lawfulness of his arrest; nor does he assert that the police were not entitled to search the passenger compartment of his vehicle incident to his arrest. Instead, appellant contends that the scope of the search did not extend to the locked glove compartment. Hence, he concludes that the search of the locked glove compartment violated his rights under the Fourth Amendment and Article 26 of the Maryland Declaration of Rights.[7]

---

7. The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article 26 of the Maryland Declaration of Rights states:

That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to

We have previously discussed the warrantless search of a locked glove box, albeit in the context of a distinguishable factual scenario and legal theory. In *Cross v. State,* 165 Md.App. 164, 884 A.2d 1236 (2005), we addressed whether evidence seized from a locked glove compartment box during a "*Terry* stop" was admissible.[8]

Cross was detained by police in the parking lot of a 7–11 in Bladensburg after a citizen reported to police that he observed Cross display a handgun during a car chase. The witness identified Cross to police in the 7–11 parking. The police observed and then detained him before he could escape in his vehicle. Cross was handcuffed and frisked, but no weapon was found on his person. Police then searched the interior of his vehicle. One police officer observed that the glove compartment "was partially apart," which allowed him to pull the compartment "open a little bit," so he could see a handgun inside. *Id.* at 172, 884 A.2d 1236. A fellow officer then retrieved Cross's keys and unlocked the glove compartment, finding a "handgun, together with a bag containing a large quantity of narcotics." *Id.* at 177, 884 A.2d 1236.

Reviewing the facts developed at the suppression hearing, we determined that Cross was "detained but not under arrest prior to the warrantless search." *Id.* at 180, 884 A.2d 1236. Cross argued that the State had failed to show that probable cause existed for the police to believe, at the time of the search, that the car contained a handgun. *Id.* at 178, 884 A.2d 1236. Because we determined that Cross was not under arrest during the search of vehicle, but merely detained, we did not reach the issue of probable cause. Instead, we held

apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not be granted.

**8.** In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court upheld the validity of a protective search for weapons in the absence of probable cause to arrest. The Court held that it was unreasonable to deny police the right "to neutralize the threat of physical harm" when a police officer possesses a reasonable articulable suspicions that an individual is armed and dangerous. *Id.* at 24, 88 S.Ct. 1868.

that the search came within the scope of *Michigan v. Long,*
463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). *Id.* at
183, 884 A.2d 1236. In *Long,* the Supreme Court held that
when a person was detained by police, it was permissible
under the principles articulated in *Terry, supra,* and its pro-
gency, to conduct a protective search of a motor vehicle for
weapons. *Long, supra,* 463 U.S. at 1035, 103 S.Ct. 3469.

Our holding in *Cross* stems from the distinguishing factual
characteristics of a *Terry* stop and the *Long* analysis. We
find no prior Maryland case, however, dealing with the search
of a locked glove compartment *incident to arrest,* and counsel
has not directed us to such authority.[9] Therefore, we con-
clude that the issue presented in the case *sub judice* is one of
factual first impression, and which calls for the application of a
*Belton* analysis. There is, however, federal authority on the
issue of opening locked containers during vehicle searches
incident to arrest.

■ The Fourth Amendment prohibits warrantless
searches, subject to certain exceptions that have been judicial-
ly announced. The "automobile exception," or "Carroll Doc-
trine" is one exception to the warrant requirement. *See
Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed.
543 (1925). "If a car is readily mobile and probable cause
exists to believe it contains contraband, the Fourth Amend-
ment . . . permits police to search the vehicle without more."
*Maryland v. Dyson,* 527 U.S. 465, 467, 119 S.Ct. 2013, 144
L.Ed.2d 442 (1999) quoting *Pennsylvania v. Labron,* 518 U.S.
938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996). *See Wilson
v. State,* 174 Md.App. 434, 440, 921 A.2d 881 (2007), *cert.
denied,* 400 Md. 649, 929 A.2d 891 (2007).

A search of an arrestee, incident to a lawful arrest, is
another of the exceptions to the warrant requirement of the

---

9. *DiNatale v. State,* 8 Md.App. 455, 260 A.2d 669 (1970), involved the
   seizure of evidence from a glove compartment during a search incident
   to a lawful arrest. However, it is not apparent from the opinion
   whether or not the glove compartment was locked. *Id.*

Fourth Amendment. In *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court held:

> it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by like rule.

*Id.* at 763, 89 S.Ct. 2034. The Court further held that a search of "any room other than that in which the arrest occurs-or, . . . searching through all the desk drawers or other closed or concealed areas in that room itself" would require a search warrant. *Id.*

The Court broadened the scope of searches incident to arrest in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). In *Belton*, police searched a vehicle during a routine, lawful traffic stop after spotting marijuana on the floor of the car. *Id.* at 455–56, 101 S.Ct. 2860. The officer seized a jacket from the rear seat of the vehicle, unzipped a pocket and discovered cocaine. The Court held that the evidence was legally seized:

> [W]e hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. Such a container may, of course, be opened or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have. Thus, while the Court in *Chimel* held that the police could not search all the drawers in an arrestee's house simply because the police had arrested him at home, the Court noted that drawers within an arrestee's

reach could be searched because of the danger their contents might pose to the police.

*Id.* at 460–61, 101 S.Ct. 2860 (citations omitted).

Appellant, seeking sustenance from *Belton,* argues that "[t]he Court could easily have included within the definition of this scope a locked glove box, but it did not do so." We note, however,—as did the circuit court below—that Justice Brennan, joined by Justice Marshall in a dissent, offers guidance to interpretation of the majority holding:

> [T]he Court for the first time grants police officers authority to conduct a warrantless "area" search under circumstances where there is no chance that the arrestee "might gain possession of a weapon or destructible evidence." Under the approach taken today, the result would presumably be the same even if Officer Nicot had handcuffed Belton and his companions in the patrol car before placing them under arrest, and *even if his search had extended to locked luggage or other inaccessible containers* located in the backseat of the car.

*Id.* at 468, 101 S.Ct. 2860 (citations omitted) (emphasis added).

The dissent supports an interpretation that the Court did not intend to exclude other locked areas, i.e., glove compartments. Appellant concedes that "the numerical weight of decision authority on this issue favors extension of *Belton* to locked glove boxes." We agree.

### Our Sister States

A number of other jurisdictions have also determined that locked glove compartments may be searched incident to a lawful arrest, even after the arrestee has been secured and safely removed from the vehicle.

In *People v. Dieppa,* 357 Ill.App.3d 847, 294 Ill.Dec. 458, 830 N.E.2d 870, 873 (2005), the defendant, Alfonao Dieppa, was stopped for a legitimate traffic offense. Upon learning of an open warrant, the officer placed Dieppa under arrest and secured him in the squad car. The officer's search of the car included opening the glove compartment, in which he found a

zipped bank bag that, when opened, revealed a handgun. On appeal by the state from a trial court ruling suppressing the gun, the Illinois Appellate Court relied upon—and built upon—*Thornton v. United States*, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004).

> *Thornton* controls this appeal. When [the officer] searched defendant's car, defendant was a recent occupant, having just parked it. That defendant was outside the car when [the officer] stopped him is legally irrelevant under *Thornton,* as is the fact that he lacked any realistic access to the passenger compartment when [it was searched].
>
> Because [the officer] could legally search the passenger compartment of the car, he could also legally search the glove compartment. The glove compartment, whether locked or unlocked, was a "container," as was the bank bag inside it.

*Dieppa,* 830 N.E.2d at 873.

The Court of Appeals of Kansas, on somewhat similar facts, held that exigent circumstances warranted extending the search of a vehicle to the locked glove compartment, applying the officer safety rationale of *Chimel. Kansas v. Box,* 28 Kan.App.2d 401, 17 P.3d 386 (2000).

Box, the driver of a vehicle that was stopped for a traffic violation, consented to a search of the vehicle. Because of doubt as to who owned the vehicle, the officers also asked for the consent to search from the front-seat passenger who, they learned, was paralyzed from the waist down. That consent was likewise given. Based on conflicting information as to identity, a record check that revealed warrants, and a concern for their safety, the officers pried open the glove compartment, finding a loaded .9 mm handgun. The Kansas court observed:

> We conclude under *Chimel* . . ., the officer's safety after the arrest of defendant and the female passenger outweighed defendant's privacy interest in the locked glove compartment, because [the front-seat passenger] was not under

arrest or handcuffed and remained in the car and in close proximity to the locked glove compartment.

*Box,* 28 Kan.App.2d at 408–09, 17 P.3d at 391.

David Farr was finally apprehended after a lengthy high speed chase, was arrested for alcohol-related motor offenses, and secured in the arresting officer's police vehicle. Thereafter, the officer utilized Farr's key to open the locked glove compartment, which yielded controlled contraband. Relying on *Belton,* the Appellate Court of Connecticut observed that "[i]t is clear, therefore, that the permissibility of a vehicle search made incident to a lawful custodial arrest is not defeated when the arrestee is removed from his vehicle, handcuffed and placed in a patrol car." *State v. Farr,* 24 Conn.App. 259, 587 A.2d 1047, 1050 (1991).

After the lawful arrest and securing of Sergio Gonzalez, and the passenger in the vehicle that he was operating, the police obtained the car key and opened the locked glove compartment. The trial court suppressed the heroin found therein, but the Florida District Court of Appeal reversed: "we do not believe that the Supreme Court in *Belton* intended to make a distinction between a locked glove compartment and an unlocked one with respect to a search incident to an arrest." *State v. Gonzalez,* 507 So.2d 772, 773 (Fla.Dist.Ct.App.1987).

In *State v. Reed,* 634 S.W.2d 665 (Tenn.Crim.App.1982), the court concluded that "[w]hile it may be true [that the defendant] was neutralized before the officer entered the locked glove compartment, this is not controlling. With the arrest ... [the officer] had the corresponding right to search ... the glove compartment contemporaneously with the arrest ..."

Other state decisions are in accord. *See State v. Hanna,* 173 Ariz. 30, 839 P.2d 450 (1992)(police officers who had arrested motorist could make warrantless search of automobile, including locked glove compartment); *State v. Fry,* 131 Wis.2d 153, 388 N.W.2d 565 (1986)(there is no meaningful distinction between a locked and closed glove compartment or closed and locked container; all closed containers, locked or unlocked, can be searched if they are in automobile that may

be searched incident to an arrest); *State v. Massenburg,* 66 N.C.App. 127, 310 S.E.2d 619, 622 (1984)("the Supreme Court has evidenced an intent to allow a warrantless search of a locked glove compartment pursuant to a lawful arrest").

We are mindful of a contrary result in *State v. Glenn,* 140 Wash.App. 627, 166 P.3d 1235, 1239 (2007). The Court ruled that officers may search the passenger compartment of vehicle incident to arrest, but may not unlock and search locked containers or a locked glove compartment without obtaining a warrant. That result is, however, distinguishable from the instant case, and the cases that we have recounted, *supra,* because

> [T]he Washington Constitution provides greater protection to individuals against warrantless searches of their automobiles than does the Fourth Amendment to the United States Constitution. This is a strict rule with narrowly construed exceptions.

*Glenn,* 166 P.3d at 1238.

### Apposite Federal Decisions

A number of federal cases likewise support our view that the search of appellant's locked glove compartment was not impermissibly broad.

In *United States v. Silva,* 745 F.2d 840, 847 (4th Cir.1984), the search, incident to the lawful arrest, of a bag that, at the time of the arrest was in the same hotel room with Silva, and at the time zipped closed, was found to be lawful. A search incident to arrest was said to lawfully include the opening of both open and closed spaces, as well as locked compartments. *See United States v. Currence,* 446 F.3d 554, 557 (4th Cir. 2006); *United States v. Palmer,* 360 F.3d 1243, 1246–47 (10th Cir.2004). The search of a locked box on the front seat of the defendant's vehicle was held to be valid incident to arrest in *United States v. Thomas,* 11 F.3d 620, 628 (6th Cir.1993).

Also instructive in our discussion is *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), in which the Court took up the distinction between a search of the

trunk of Ross's vehicle and a search of a closed paper bag and a zippered leather pouch found in the trunk. Earlier, at the time of Ross's arrest, officers, seeing a bullet on the front seat, searched the interior of the vehicle and the glove compartment. No challenge to that initial search was raised. The Court held that

> the scope of the warrantless search authorized by [the Carroll] exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.

*Id.* at 809, 102 S.Ct. 2157.

Applying that analogy, we are confident that had a magistrate been provided with information, by way of affidavit, then known to Officer Bowser, a search warrant would have issued, the obvious target of the warrant being a firearm that might have fit the holster that Hamel was wearing at the time of his arrest.

Finally, we find support for our conclusion in *United States v. Holifield,* 956 F.2d 665, 666–67 (7th Cir.1992). Holifield was observed by police officers leaving a tavern and, thereafter, driving erratically. The officers effected a traffic stop and, because of Holifield's initial aggressiveness, subjected him to a pat-down. No weapons were discovered. The officers then removed two passengers from the car and found no weapons on them. But, before permitting them to re-enter the car, the officers examined the interior. Again, no weapons were found. At that point, one of the officers "removed the car keys from the ignition and unlocked the glove compartment where he found a pistol." *Id.* at 667.

In dealing with the issue of the search, the *Holifield* court quoted from *Michigan v. Long, supra:*

> The search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which,

taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Id.* at 1049–50, 103 S.Ct. 3469 quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Holifield, although belligerent and aggressive toward the officers just after the traffic stop had been effected, eventually quieted and became compliant. A pat-down disclosed no weapons on either Holifield or his passengers. Nonetheless, the court observed:

We agree that the absence of weapons on the persons of the three men, and the fact that there was no further aggressive behavior did not, as a matter of law, make continuing apprehension of danger unreasonable.

Further, the Court said:

[t]his court has upheld the denial of a motion to suppress evidence in a situation where intervening factors were argued to have dissipated or at least reduced the officers' reasonable belief of danger.

*Holifield, supra,* 956 F.2d at 668.

In the instant case, Hamel was stopped while accompanied by three passengers, who, for a time, remained in the vehicle and who thereafter had the possibility of access to the interior of the vehicle. Particularly telling, in terms of the officers' reasonable apprehension, is the fact that Hamel was found to be wearing a firearm holster. It was reasonable for the officers to infer from the presence of an empty holster on Hamel's belt the very real potential that a firearm was to be found nearby. We agree with the *Holifield* court that

a protective search for weapons is limited in scope, but the fact that it is a limited search does not mean that it may not encompass the glove compartment. Protective searches are only limited in the sense that the officer conducting the protective search must first have a reasonable suspicion that the suspect is dangerous and the protective search must be

directed only to locations which may contain a weapon and to which the suspect may have access.

*Id.* at 669.

In terms of the accessibility of firearms to one being arrested, we recall the observations of the Supreme Court in *Long, supra,* 463 U.S. at 1048–49, 103 S.Ct. 3469 that

we have also expressly recognized that suspects may injure police officers and others by virtue of their access to weapons, even though they may not themselves be armed.... We [have] reasoned that "a gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested."

Most recently, the Supreme Court considered *Thornton v. United States, supra.* As does the matter before us, *Thornton* involved a petitioner who was arrested following a traffic stop and secured without access to his vehicle. After Thornton was secured in the police vehicle his vehicle was searched and a firearm was located under the driver's seat.

Chief Justice Rehnquist set the predicate for the Court's discussion:

We have granted certiorari twice before to determine whether *Belton*'s rule is limited to situations where the officer makes contact with the occupant while the occupant is inside the vehicle, or whether it applies as well when the officer first makes contact with the arrestee after the latter has stepped out of his vehicle ... We now reach that question and conclude that *Belton* governs even when an officer does not make contact until the person arrested has left the vehicle.

*Thornton, supra,* 541 U.S. at 617, 124 S.Ct. 2127.

The Court continued:

To be sure, not all contraband in the passenger compartment is likely to be readily accessible to a "recent occupant." It is unlikely in this case that petitioner could have reached under the driver's seat for his gun once he was

outside of his automobile. But the firearm and the passenger compartment in general were no more inaccessible than were the contraband and the passenger compartment in *Belton*. ... Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment.

*Id.* at 622–23, 124 S.Ct. 2127.

### Factual First Impression

As we have observed, *supra*, n. 8, our attention has been directed to just one reported Maryland opinion dealing with the search of a glove compartment *incident to arrest*. In *DiNatale, supra*, this Court offered a brief discussion of the search and seizure issue. In relevant part, the Court said:

The convictions of the crimes alleged to have occurred on 7 October were predicated upon evidence obtained from the glove compartment of the car in which appellant was arrested under authority of an arrest warrant. The search was incident to his arrest and the seizure was a corncob pipe, which upon analysis was proved to contain marijuana. The arrest of appellant under the authority of the warrant was legal and appellant does not claim that it was not. The arrest being legal the contemporaneous search of the automobile in which he was seated when arrested was reasonable as incident to the arrest and the seizure of the evidence found in the glove compartment was likewise reasonable. *Tierney v. State*, 7 Md.App. 56, 64–65, 253 A.2d 528 [ (1969) ].

*DiNatale, supra*, 8 Md.App. at 459, 260 A.2d 669.

On that limited discussion, we are unable to discern the details of the search of the glove compartment of the vehicle in which DiNatale was seated; particularly, whether the compartment was locked or unlocked immediately preceding the search.

## The Reach of Article 26 of the Maryland Declaration of Rights

Finally, appellant argues that because there is no reported appellate authority in Maryland on this precise factual scenario, in the conduct of our own constitutional analysis we should depart from the precedent of the federal circuits by interpreting Article 26 of the Maryland Declaration of Rights to provide more expansive protection to appellant than does the Fourth Amendment. We decline his invitation.

Maryland has long held that Article 26 of the Maryland Declaration of Rights is to be interpreted *in pari materia* with the Fourth Amendment. *See Fitzgerald v. State,* 384 Md. 484, 506, 864 A.2d 1006 (2004)(citing *Gahan v. State,* 290 Md. 310, 319, 430 A.2d 49 (1981)); *Purnell v. State,* 171 Md.App. 582, 603, 911 A.2d 867 (2006). We find no reason on the record before us to depart from that precedent.

The search comports with *Belton* and *Thornton*. The fact that Hamel was secured and without access to his vehicle did not cause the search of the locked glove compartment to exceed the permissible scope of the search incident to his arrest. The circuit court did not err in denying appellant's motion to suppress.[10]

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED; COSTS ASSESSED TO APPELLANT.**

---

10. The State does not raise the issues of either inevitable discovery or inventory search discovery.